STATE OF MISSOURI, Respondent, v. CONRAD BREIT-
WEISER, Appellant.

### St. Louis Court of Appeals, April 23, 1901.

1. **Criminal Law: CRIMINAL PROCEDURE: FALSE AFFIDAVIT: STATUTORY CONSTRUCTION.** A false affidavit, if made for "any purpose," would come within the purview of section 2036, Revised Statutes 1899.

2. ———: ———: ———: **POLITICAL PARTIES ARE VOLUNTA- RY ASSOCIATIONS.** In the case at bar, the affidavit was made in respect to a contest for committeeman for the Republican  party, from the Twenty-eighth ward of the city of St. Louis.   Political par- ties are voluntary associations for governmental purposes, and they are recognized by the election laws of the State as factors in the election of its officers.

3. ———: ———: ———: **CONTESTS IN CHOICE OF COMMIT- TEEMEN.** In the case at bar, a contest is alleged to have arisen in the selection of a central committeeman of the Republican party for the Twenty-eighth ward of the city of St. Louis, and defendant is alleged to have made a false affidavit in respect to such con- test.

4. ———: ———: ———: **EVIDENCE: PROCEEDING.** And in the case at bar, the affidavit made by defendant was made in a pro- ceeding wherein affidavits might be made and used in evidence.

Appeal from St. Louis Court of Criminal Correction.—*Hon. J. W. Booth,* Special Judge.

AFFIRMED.

*R. Lee Mudd* and *Wm. H. Clopton* for appellant.

(1)   The demurrer to the information and the motion

in arrest of judgment should have been sustained, for the reasons that: (a) No time is averred to the alleged unlawful swearing; and, in fact, no primary averments that the defendant himself made any oath at all appears in the information. "Time and place must be laid to every material fact in an indictment." Hildebrand v. State, 5 Mo. 548; See also this elementary rule stated in Heard's Cr. Pl., p. 83; 1 Chitty's Cr. Law, side page 198; Wharton's Cr. Pl. (8 Ed.), sec. 131. (b) It fails to make the primary averment that the defendant made a "false affidavit," but only says a sworn affidavit. This plainly violates even the relaxed rule for statutory crimes requiring that the form of the statute be followed. See in general, Heard's Cr. Pl., 166; State v. Miller, 132 Mo. 300; State v. Hayward, 83 Mo. 299. (2) Besides the foregoing ground, the information moreover does not show the use or applicability of the condemned affidavit in any proceeding recognizable by law. For howsoever general the terms of the statute may appear, yet as has been well said, "the intention must show some pending proceeding in relation to which an affidavit might by law be required." Kelly's Cr. Law, sec. 836.

*Ashley Glover, Fauntleroy & Fauntleroy*, and *Simon S. Bass* for respondent.

(1) The proposition advanced on the other side is that this affidavit was not made "in any proceeding recognizable by law." Our answer to this proposition is, as is said in the case of State v. Boland, 12 Mo. App. 77: "This section has been the subject of judicial construction in Indiana in a case that was considered, however, long after the section was adopted into our own law. The Supreme Court of Indiana holds (The State v. Flagg, 25 Ind. 254), that the policy of the provision

is to discourage all unnecessary and voluntary affidavits or sworn statements, and that where no oath or affirmation is required to the statement, if the person making the statement voluntarily make a false oath thereto, he shall be held liable under this section, although such statements may not be of a matter material to the question involved." Then again, inasmuch as our statutes provide for the election machinery and primary organization of party politics (Article 4, p. 1663, Revised Statutes 1899), this affidavit was made to be used before the delegation in their selection of a central committeeman for the twenty-eighth ward and for the purpose of defeating Myerson for that place. (2) The whole affidavit was a false and sinister attack on the character and conduct of Aloe and the rest of his associates in the delegation, and meant to be such; and which, if true, seriously affected their characters, as men in the community, and it is just such attacks that the statute was meant to prevent and stop.

BLAND, P. J.—The information is bottomed on section 2036, Revised Statutes 1899, and is, omitting caption, as follows:

"Richard M. Johnson, assistant prosecuting attorney of the St. Louis Court of Criminal Correction, now here in court, on behalf of the State of Missouri, information makes as follows:

"That Conrad Breitweiser, in the said city of St. Louis, on the sixth day of April, 1900, came in his own proper person before Moses Hartman, who was then and there a notary public, duly commissioned and qualified within and for the said city of St. Louis, and State of Missouri, and having full authority, and being then and there duly qualified by law to administer oaths, and knowingly, willfully, corruptly, falsely and voluntarily made the following sworn affidavit and state-

ment, as is hereinafter specified, of and concerning this affiant, Louis P. Aloe, and the other parties named in said affidavit and statement, and of and concerning each of them, which said affidavit and statement is in the following words and figures:

"Conrad Breitweiser, of lawful age, being duly sworn, says that he is a legal resident and registered voter in the twenty-eighth ward and that he was one of the candidates on the Citizens' Republican Delegation to the State convention, voted for on March 30, 1900, in said ward, and which delegation was elected by the Republican electors of said ward on that day; that at a meeting of the entire delegation at its headquarters, at No. 310, Vine street, in the city of St. Louis, on Monday, the second day of April, 1900, it was moved, seconded and carried that we proceed to ballot for a central committeeman for the twenty-eighth ward, and a vote by paper ballot being had, affiant with four other delegates cast their ballots for committeeman for said ward for Daniel N. Kirby, who was his free, voluntary and untrammeled choice for said office.

"Affiant further says that on the second day of April, 1900, after so casting his ballot as aforesaid and without a reconsideration of the vote expressed thereby, the delegation adjourned at Mr. Kirby's request, to meet at 12 o'clock, noon, on April 3, 1900, with an understanding that an effort would then be made to agree upon some plan for harmony, through Mr. Kirby's possible withdrawal and the selection of a candidate on whom all might unite.

"Affiant further states that on the afternoon of the second day of April, 1900, after the said meeting of the delegation of the twenty-eighth ward, he was induced to meet four of said delegates, to-wit: Louis P. Aloe, Samuel F. Myerson, John F. Nangle and Henry Smith, in a private room of a saloon and restaurant; that the remaining members were not

present and were not told of the meeting; that wines, whiskey, beer and champagne were served and that by threats and promises said four members sought to induce him to declare himself for Samuel F. Myerson, for central committeeman; that the said delegates remained in said room for upwards of two hours, the four persisting in their efforts to have affiant change his position. That finally, to escape their personal importunities and under the influence of intoxicants, he signed what he understood to be a promise to vote for Samuel F. Myerson on the following day, and that the said four delegates, well knowing that this was not his real purpose, thereafter had a notary to take his acknowledgment or affidavit, the exact fact being to him unknown.

"Affiant says that he is informed that said paper so signed by him had been filed with the chairman of the city central committee as his vote for committeeman for the twenty-eighth ward.

"Affiant further says that the said paper was not represented to him to be his choice; that he did not so understand it; that said paper did not in any event represent his vote as he has cast it at any time when said delegation was properly assembled; and that it does not represent his choice for committeeman at any time, but that it was obtained from him unfairly by misrepresentation and undue advantage, as said four members well knew then and well know now.

"That pursuant to adjournment on Tuesday, April 3, 1900, the delegation again met, all members being present, and a motion to reconsider the action of the previous day was made, seconded and carried, all members voting in favor of it, except Benjamin J. Klene.

"That thereupon Samuel F. Myerson announced that a certificate signed by five members of the delegation, and reporting his own election as committeeman has already been

State v. Breitweiser.

filed with Hon. Theo. D. Kalbfell, chairman of the city central committee. Thereafter Henry Smith left the meeting.

"Thereupon a motion was made and seconded to reaffirm the action and vote of the meeting held at noon of the previous day.

"That affiant, together with Messrs. Frank Wyman, Peter M. Hanson, Charles W. Holtkamp and Benjamin J. Klene voted in favor of the motion, and it was carried.

"That thereafter, affiant, together with Messrs. Frank Wyman, Peter M. Hansen, Charles W. Holtkamp and Benjamin J. Klene, signed a written report certifying to Hon. Theo. D. Kalbfell, the election of Daniel N. Kirby as committeeman from the twenty-eighth ward.

"That this latter is the only certificate signed by affiant in conformity to a vote had at any meeting of said delegation.

"Wherefore, affiant protests against his vote being considered cast for Myerson, but wishes it on the contrary to be counted and considered that the only vote cast by him on his own volition, was the vote for Daniel N. Kirby, and that the certificate reporting the election of Daniel N. Kirby is the certificate which expresses the only vote and choice of affiant.

"CONRAD BREITWEISER.

"Subscribed and sworn to before me this sixth day of April 1900. My commission expires August 28, 1902.

"MOSES HARTMAN, Notary Public.

(Seal of Notary.)

"That that portion of said affidavit and statement which alleges 'that by threats and promises said four members (meaning and referring to said Louis P. Aloe, Samuel F. Myerson, John F. Nangle and Henry Smith) sought to induce him to declare himself for Samuel F. Myerson, for central committeeman' is false and untrue.

"Whereas, in truth and in fact, neither said Aloe nor

any of the other said persons or parties therein named, ever, at any time, used or made any threats or promises, nor did any of them ever seek by any threats or promises, either as is stated in said affidavit or statement, or otherwise, to induce him, the said Breitweiser, to declare himself for said Samuel F. Myerson for central committeeman, or for any other place or purpose, and that said sworn statement or affidavit was so made by said defendant Breitweiser voluntarily, willfully, corruptly and falsely, he then and there at all of said times well knowing the same to be false and untrue;

"That the following part and portion of said affidavit and statement so made by said defendant Breitweiser, and which reads as follows: 'that the said delegates (meaning and referring to Louis P. Aloe, Samuel F. Myerson, John F. Nangle, and Henry Smith), remained in said room for upwards of two hours; the four persisting in their efforts to have affiant change his position (thereby meaning that said last four named persons, Louis P. Aloe, Samuel F. Myerson, John F. Nangle and Henry Smith, as is herein stated, persisted in their efforts for upwards of said two hours, to have him, the said defendant change his vote to and for Samuel F. Myerson, for said place of Central Committeeman, as heretofore stated). That finally to escape their personal importunities, and under the influence of intoxicants, he signed what he understood to be a promise to vote for Samuel F. Myerson on the following day and the said four delegates (thereby meaning said Louis P. Aloe, Samuel F. Myerson, John F. Nangle and Henry Smith) well knowing that this was not his real purpose, thereafter had a notary take his acknowledgment or affidavit, the exact fact being to him unknown.' That each and all of said facts are false and untrue, and were made and sworn to by said defendant Breitweiser, well knowing at all of said times, and at the time he so made and swore thereto, that each of the same were false and untrue;

"Whereas, in truth and in fact, said defendant Breitweiser, did not understand, or mean, or intend by what he signed, as is stated by him in said affidavit and statements, to be a promise to vote for said Myerson on the following day, but he did, on said occasion then and there, mean and intend, and he did then and there vote for and elect and sign in writing his selection of said Myerson for said place of city central committeeman, and

"Whereas, in truth and in fact, said defendant Breitweiser, signed and made the said signed vote and designation of said Myerson, and then and there cast and signed his said vote for said Myerson freely and voluntarily, and not to escape any importunities of this affiant, Aloe, or any of said parties, and that he made and swore to said facts voluntarily and while he was perfectly sober, and that at said time he was not under the influence of any intoxicants, or of any wines, or whiskeys, or champagne or beer, and none of said four delegates or parties knew that the same did not set forth his real purpose; but to the contrary, each of said delegates and parties, at all of said times, were fully informed by said defendant, and fully believed at all of said times that the said signed promise so made by said Breitweiser, did fully set forth and state his real purpose, and that none of said parties, nor did any other person, have a notary take defendant Breitweiser's acknowledgment or affidavit, the exact fact or facts in relation thereto being to him unknown, but the fact then and there was, said Breitweiser fully knew at all of said times, each and every fact which was then and there had, or which then and there existed regarding said matters, and he fully knew and had explained to him what the true facts were in regard thereto, and to all of said matters when said notary took his said acknowledgment and affidavit; that each and every one of said facts hereinbefore set forth are false and untrue, and were then and there made by

said defendant Breitweiser, knowingly, voluntarily, willfully, corruptly and falsely;

"That the following part and portion of said statement and affidavit, which is as follows: 'Affiant further states that the said paper was not represented to him to be his choice; that he did not so understand it,' are false and untrue; that each and every one of the said facts were sworn to by said Breitweiser, knowingly, willfully, corruptly and falsely, he then and there, and at the time he so made the same, well knowing that the same were false and untrue;

"Whereas, in truth and in fact, said parties did then and there represent to him that said paper did represent and was his choice of and vote for said Myerson, as said central committeeman, and said Breitweiser did, at the time he so signed and made the same, fully understand it, and all facts relating thereto.

"That the following part and portion of said statement and affidavit, which is as follows: 'That it (meaning said certificate which said Breitweiser signed voting for said Samuel F. Myerson), does not represent his choice for committeeman at any time, but that it (meaning thereby said certificate which said Breitweiser signed for said Samuel F. Myerson) was obtained from him unfairly by misrepresentation and undue advantage, as said four members well knew then and well know now,' was at all times herein stated, and at the time he made said affidavit and statement, false and untrue, as said Breitweiser then and there well knew, and was then and there made by said defendant, Breitweiser, knowingly, voluntarily, willfully, corruptly and falsely;

"Whereas, in truth and in fact 'it' (meaning thereby said certificate which said Breitweiser signed for said Samuel F. Myerson) did, at the same time it was signed and made by said Breitweiser, represent his choice for said place of central com-

mitteeman and, whereas, in fact and in truth, the same was not obtained from him unfairly, or by any misrepresentation or by any undue advantage, as said four members (meaning thereby Louis P. Aloe, Samuel F. Myerson, John F. Nangle and Henry Smith), or any of them, well knew then or at any time, but, to the contrary, this affiant and complainant states that said signed vote for and designation of said Myerson, and which was made by said Breitweiser, as is herein stated, was knowingly and voluntarily made by him, and without any misrepresentation or any advantage being taken of him by anyone, and each and all of said four members (Louis P. Aloe, John F. Nangle, Samuel F. Myerson and Henry Smith), well knowing and believing that the same was his free act and deed, and that said Myerson was at said time his free and voluntary choice for said place of said central committeeman.

"That said affidavit and statement and said voluntary false, willful and corrupt statements and each and every one thereof was so made by defendant Breitweiser, he, then and there, and at all of said times well knowing the same, and each and every one thereof, to be false, corrupt and untrue at the time they were so made by said defendant Breitweiser, and they and each thereof were so made by said Breitweiser, with the intent, and for the purpose, and in order that the said affidavit and statements might and should be used by one Daniel N. Kirby and his friends and adherents, and by them read and introduced in that certain contest and controversy which was then and there being carried on between Daniel N. Kirby and said Samuel F. Myerson, for the said position of city central committeeman of the Republican party for the twenty-eighth ward of the said city of St. Louis, and for the purpose of influencing and prejudicing the minds and opinions of the members of the said Republican central commit-

tee of the city of St. Louis, the said Republican committee of the city of St. Louis then and there having jurisdiction of, and the lawful right, authority and power to adjudicate, determine and adjudge the issues in the contest aforesaid, between the said Daniel N. Kirby and said Samuel F. Myerson, for the said position of central committeeman for the Republican party of the said. twenty-eighth ward of the city of St. Louis in the decision of said contest and controversy, which said contest and controversy was then and there pending before said Republican central committee, in favor of said contestant, Daniel N. Kirby, and said false affidavit and false statements were made by said defendant Breitweiser, were so used in said contest by said parties and by said committee, all of which was done with the knowledge and consent of said defendant, Breitweiser, and for the purpose and intent upon the part of said defendant Breitweiser, of defaming the reputations and characters of said Louis P. Aloe, and of said Samuel F. Myerson, John F. Nangle and Henry Smith, and each and every one of them, and of which was had and done by said Breitweiser, contrary to the statutes in such case made and provided, and against the peace and dignity of the State of Missouri."

Defendant interposed a demurrer to the information on the grounds in substance: first, that it appears on the face of the information that the affidavit was not made in any proceeding or transaction, where an affidavit might be made; second, that it affirmatively appears that the prosecuting witness is using the process of the criminal law in contravention of public policy and to take advantage of his own wrong; and third, that the information fails to charge any criminal offense. The demurrer was overruled. Defendant was put on his trial, was found guilty and took his appeal to this court.

The evidence is voluminous; without setting it out it suffices to say, it is ample to warrant the conviction, and that the

judgment should be affirmed unless the demurrer should have been sustained or reversible error intervened at the trial. The statute in respect to the making of false affidavits is exceedingly broad. If made for "any purpose" it would come within the letter of the statute. The contention of appellant is, that it must have been made with reference to some pending proceeding, in which an affidavit might be made. Without accepting this as the correct interpretation of the statute, for the purpose of the demurrer it may be so interpreted. The affidavit was made in respect to a contest for committeeman of the Republican party, from the twenty-eighth ward of the city of St. Louis. Political parties are voluntary associations for governmental purposes, and their state, county, township, city and ward committees, by and through which they are put in motion and the party machinery is controlled, are recognized by the election laws of the State, as factors in the election of its officers. That contests in the choice of these committeemen and in the selection of their executive officers may and do arise, goes without saying. Such a contest is alleged to have risen in the selection of a central committeeman of the Republican party for the twenty-eighth ward and the defendant is alleged to have made the false affidavit in respect to that contest. We see no reason why affidavits in such a contest may not be heard and considered as evidence by the persons whose duty it is to decide contests of this nature and have no hesitancy in saying, that the affidavit made by the defendant was made in a proceeding wherein affidavits might be made and used as evidence. There is nothing on the face of the information in support of the other grounds of the demurrer and we think it was properly overruled.

II. Kirby, a witness, testified in respect to a meeting held on April third, at which the action of the previous day (when defendant had signed and acknowledged a certificate

that he voted for Myerson), was discussed, that witness talked to defendant about the matter. He was asked by defendant's counsel, what, if anything he said to defendant about the propriety of making the affidavit and what assistance he gave toward the preparation of the affidavit. Objections were made and sustained to these questions. To this ruling defendant saved exceptions. We are unable to see the relevancy of this proffered testimony and think it was properly excluded as was the declaration of defendant, that he was drunk and made a fool of himself when he signed the certificate of Myerson's election.

III. Defendant testified that on the day he signed the certificate he had been plied with drinks by Aloe, Myerson and Williams and had been pressed to sign the paper which was represented to him to be, and which he believed, was only his promise to vote for Myerson on the next day, and that he made the affidavit to set his vote right and so he could vote for Kirby. On cross-examination he was asked if he had not been running with the Myerson and Aloe crowd in politics. This was objected to on the ground that no foundation had been laid. The objection was overruled, to which ruling defendant saved one exception. The foundation for the question was the witnesses' testimony in chief, tending to show that he was not friendly with the political crowds referred to, and inferentially contradicted his statement that he did not intend to vote for Myerson when he signed the certificate. The cross-examination was legitimate, for the reason it tended to contradict or at least to weaken the witnesses' testimony in chief as to a material fact, to-wit, his friendship for Myerson and Aloe.

IV. The issues were tried to the court sitting as a jury. No declarations of law were asked on the part of the State. For defendant the court gave four and refused five declarations of law. The first given required the court to acquit if he had

a reasonable doubt of defendant's guilt. The second declared in substance that defendant could not be convicted unless he voluntarily made the affidavit, willfully and corruptly, and that the statements or some substantial portion of them were false and that defendant either knew the same to be false or had no reasonable grounds to believe them to be true. The third declared in substance, that if the statements in the affidavit were made through inadvertence or mistake, from misunderstanding or any other cause, the defendant could not be convicted. The fourth, in substance, directed the court in determining whether or not the defendant had probable cause to believe the affidavit to be true when he made it that the court should look at the situation from defendant's view point and intelligence, and not from a viewpoint the court might set up for itself. And if, after so looking at the facts and circumstances, the court should be reasonably satisfied that when defendant made the affidavit he believed it to be true, then it was not corruptly made. · From this instruction the court struck out two clauses, one of which, in effect disclosed that the affidavit was not corrupt, if the defendant had probable cause to believe the same to be true, the other that it was not corrupt, if defendant acted inconsiderately and without an intelligent understanding of the meaning of the statements he swore to. There is no evidence that the defendant swore to the affidavit without knowing or understanding its contents. He did not defend on the ground that he was inveigled into making an affidavit, the contents of which were concealed from him or misrepresented to him, and he was not entitled to a declaration of law having no evidence to support it. In the second declaration given, it is declared in a negative form that the affidavit was not corrupt if the defendant had reasonable grounds to believe it to be true. The trial being to the court, it was not necessary to declare the same proposition in the affirmative. The declara-

tions of law as given, demonstrate that the court had a clear and correct understanding of the law, and that no good purpose could be gained by drumming in its ears the same legal proposition presented in different forms. Nor was it at all necessary to define to the *court* the legal significance of the words, voluntary, willfully, and corrupt as was attempted to be done by the refused declaration number five.

Number six, refused, is a comment on a part of the evidence and was for that reason properly refused.

Numbers seven, eight and nine, that were refused, are not specially objectionable, but the instructions given covered the whole law of the case on the part of the defendant, and it was not necessary to load down the record with additional declarations of law, though they may have been correct as legal propositions. The case was carefully tried, without the semblance of an error that we have been able to detect, and we affirm the judgment. All concur.