## THE STATE OF INDIANA *v.* MALONE.

[No. 21,655.    Filed December 7, 1910.]

1.   PERJURY.—*Indictment.—Banks.—Private.—Reports to Auditor of State.—Special.—Statute.*—Under §3408 Burns 1908, Acts 1907 p. 174, §7, providing that every "partnership, firm or individual transacting a banking business under the provisions of this act shall make to the auditor of state two reports during each and every year, according to the form which may be prescribed by him, verified by the oath or affirmation of the president, cashier or other managing agent of such bank.  *  *  *  And the said auditor shall have power to call for special reports  *  *  *  whenever, in his judgment, the same shall be necessary," an indictment for perjury in the making of a report, which fails to allege whether the report made was a regular or a special one, is nevertheless good, as against the objection that only the regular reports need verification, since such special reports are also required to be verified.  p. 749.

2.   PERJURY.—*Indictment.—Banks.—Private.—Reports to Auditor of State.—Statutes.*—Under §3408 Burns 1908, Acts 1907 p. 174, §7, providing that reports by private banks to the Auditor of State shall be "verified by the oath or affirmation of the president, cashier or other managing agent of such bank," an indictment for perjury in the making of a report need not charge that the cashier making such report was also the "managing agent of such bank."  *Hewitt* v. *State*, 171 Ind. 283, distinguished.  p. 750.

3.   PERJURY.—*Indictment.—Voluntary Affidavit.—Purpose.*—An indictment, under §2376 Burns 1908, Acts 1905 p. 584, §475, providing that whoever under oath "voluntarily makes any false certificate, affidavit, or statement of any nature, for any purpose, shall be deemed guilty of perjury," need not allege the purpose for which the false affidavit was made.  p. 751.

From Vermillion Circuit Court; *Charles N. Fultz,* Judge *Pro Tem.*

Prosecution by The State of Indiana against Frank M. Malone. From a judgment for defendant, the State appeals. *Reversed.*

*James Bingham,* Attorney-General, *Clarence G. Powell,* Prosecuting Attorney, *A. G Cavins, E. M. While* and *W. H. Thompson,* for the State.

*Hugh H. Conley, Paul H. Conley, W. B. Conley, Joshua Jump, James A. Cooper, Jr.,* and *Paul N. Bogart,* for appellee.

MONTGOMERY, J.—Appellee was charged with perjury by an indictment in two counts. The first, omitting the formal parts, charged that at Vermillion county, on March 2, 1908, and for more than five months continuously immediately prior thereto, appellee and other persons named composed a partnership, and as such "were then and there and during all of said time engaged in a banking business at Cayuga, in said county and State, under a certain banking act enacted by the General Assembly of the State of Indiana, and approved March 8, 1907 (Acts 1907 p. 174, §§3402-3417 Burns 1908), and as such then and there and during all of said time owned and operated a bank in and under the firm name and style of Malone & Son, Bankers; that said defendant was then and there acting as cashier of said bank; that on or about March 2, 1908, the Auditor of the State of Indiana, who was then and there duly qualified and acting as such auditor, ordered and required said partnership and firm to make out and transmit to said auditor a report upon, and according to, a certain form then and there prescribed and furnished by said auditor as provided by law; that the law then and there required said report to be verified by the oath or affirmation of the president, cashier or other managing agent of said bank; that the law and said form then and there required said report to exhibit in detail the resources and liabilities of said bank, and said auditor then and there ordered and required that said report exhibit in detail the

resources and liabilities of said bank at the close of business on February 14, 1908, as provided by law; that said partnership and firm did then and there, on March 2, 1908, make out and transmit to said auditor a statement according to and on said form, which then and there purported to exhibit in detail the resources and liabilities of said bank at the close of business on February 14, 1908; that said report did then and there purport to show the true condition of resources and liabilities of said partnership at the close of business on said day; that said defendant did then and there on said March 2, as cashier of said bank, duly make, take and subscribe a lawful oath to said statement, and did then and there solemnly swear that said statement was then and there true, and did then and there swear that the liabilities of said partnership on and for deposits in said bank were $49,892.82 at the close of business on February 14, 1908; that said defendant did then and there, at and in the county of Vermillion, in the State of Indiana, duly make and take said oath before Milton W. Coffin, who was then and there a duly commissioned, qualified and acting notary public in and for said county and State, and, as such, then and there had full authority to administer said oath, and as such did then and there duly administer said oath to said defendant; that said verified statement and said oath and the jurat thereto are in the following words and figures, to wit.''

The report is here set out in full, with the oath and jurat. Under the head of liabilities, demand deposits are stated to be $49,714.85, and demand certificates $177.97. Appellant made oath that the statement was true, and that the schedules in the report fully and correctly represented the true state of the several matters therein contained. It is further charged that at the close of business on February 14, 1908, said partnership was indebted and liable to depositors for deposits made in said bank in the sum of $71,313.37, which fact appellant well knew, and then and there feloniously, wilfully, corruptly and falsely swore and made oath

that the liability of said partnership, to depositors upon deposits made in said bank, was only $49,892.82.

The second count avers the conduct of the banking business as in the first, and alleges that appellant voluntarily made oath to the statement set out, and that it was false, and was made wilfully, corruptly and feloniously.

We are advised by the briefs of counsel that the first count was quashed because it did not appear therein whether the false statement was contained in one of the two reports which the auditor is required to exact annually of private banks, or in a special report, which it is assumed need not be verified. It is further stated that the court intimated an opinion that this count was probably faulty for other reasons not announced. The pertinent part of the statute relating to reports by private bankers reads as follows: "Every partnership, firm or individual transacting a banking business under the provisions of this act shall make to the Auditor of State two reports during each and every year according to the form which may be prescribed by him, verified by the oath or affirmation of the president, cashier or other managing agent of such bank, which report shall exhibit in detail the resources and liabilities of the bank at the close of business on any past day to be by him specified; and shall transmit such report to the said auditor within five days after the receipt of a request or requisition therefor from him. * * * And the said auditor shall have power to call for special reports from any particular bank whenever, in his judgment, the same shall be necessary, in order to arrive at a full and complete knowledge of its condition." §3408, *supra.*

This statute unconditionally requires two reports annually, verified by the oath or affirmation of the president, cashier or other managing agent of the bank. It further authorizes the auditor to require additional special reports, deemed by him necessary to a full and complete knowledge of the condition of any such bank. This statute was en-

acted to regulate private banking in the interests of the public welfare. The provisions of this section were designed to enforce, at all times, a disclosure of the true financial condition of the banks embraced in the act. Keeping in view the purpose of the law, it would be absurd to assume that only certain reports were to be made in due form and under oath by designated officers or agents, while others, quite as vital, might be made in any form, by any person, and without responsibility as to accuracy. It is provided in the section of the act under consideration that any bank failing to make and transmit any report required, within five days after request therefor, shall be subject to a prescribed penalty. It is our conclusion, therefore, that every report, whether regular or special, called for by the Auditor of State, under the provisions of this section, is alike required by law, and must be verified by the president, cashier or other managing agent of the bank. It seems clear to us that the report identified and set out in the first count of the indictment was one required to be verified, and hence the oath alleged to have been made by appellee was one required by law.

Appellee's counsel argue that the indictment should allege that appellee was not only cashier, but was then and there "the managing agent of the bank," and cite Hewitt

2.  v. State (1908), 171 Ind. 283. In the cited case the prescribed duty was to be performed in the future by "the owner, operator, lessee, superintendent or other person in charge." The penalty was personal, and could not be enforced without showing that the alleged offender was in such relation to the coal mine as to bring him within the requirements of the act. In this statute the report is required of the banking firm, and the penalty for nonperformance is imposed upon it. The act directs the verification to be by the president, cashier or other managing agent—in short, by some one who either knows or ought to know the true state of the bank's affairs. It is alleged that appellee was

acting as cashier, and in that capacity made the oath charged to be false. He is shown to be such an officer as might be called upon to verify the report, and, having assumed to dô so, must be held accountable for the accuracy of his statements. Other cases relating to a charge of embezzlement are cited in this connection, but they are not in point, and need not be distinguished. The first count of the indictment is not subject to the criticisms urged against it, and the court erred in quashing it.

The second count makes no allusion to any requirement of the law or of the Auditor of State, and purports to charge the commission of perjury by a voluntary affidavit 3.  under the provisions of §2376 Burns 1908, Acts 1905 p. 584, §475. This section provides that whoever wilfully and corruptly, ''voluntarily makes any false certificate, affidavit or statement of any nature, for any purpose, shall be deemed guilty of perjury.'' It is contended that this count is insufficient, because the specific purpose in making the affidavit is not charged. In the case of *Smith* v. *State* (1890), 125 Ind. 440, 443, this court incidentally said: ''The indictment in this case fails to allege any purpose in making the affidavit alleged to be false.'' The gravamen of the offense defined by this section is the corrupt and wilful making of a false and voluntary oath with respect to any matter, and without regard to the purpose in mind. The specific purpose in mind at the making of the affidavit or oath is immaterial, and an indictment needs only to show the oath, alleged to be false, with such certainty and particularity as to apprise the accused fairly of the charge he is called upon to meet. The exact affidavit or oath alleged to have been falsely made by appellee is fully set out in this indictment, and if made as charged, his purpose in making it is no constituent element of the offense. The verification of the matter set out in this count of the indictment appears to have been wholly voluntary, and the allegations are sufficient

to constitute the offense of perjury under the statute heretofore mentioned.

The judgment is reversed, with directions to overrule appellee's motion to quash as to each count of the indictment, and for further proceedings not in conflict with this opinion.