STATE OF MISSOURI, Respondent, v. L. E. LYNES, Appellant.

### Springfield Court of Appeals, June 26, 1916.

1. **INDICTMENTS AND INFORMATIONS: Prosecution for False Affidavit: Sufficiency of Indictment.** Prosecution for making a false affidavit before a notary as to fire loss with intent to defraud a fire insurance company, the sufficiency of the indictment being attacked. The statutes under which the prosecution is brought and the indictment are examined. The indictment is held good as against objections urged.

2. **————: Indictments for Felony: More Strictness as to Same than as to Indictments for Misdemeanors.** The same strictness with respect to indictments is not required in cases of misdemeanors as in cases of felony.

3. **CRIMES AND PUNISHMENTS: Perjury: False Affidavits.** Prosecution for making false affidavit as to fire loss with intention of defrauding an insurance company, the indictment being based on Sec. 4348, R. S. 1909. The accusation is considered in the light of the provisions of Secs. 4344, 6351, 10178, R. S. 1909, and it is *held* that the accused is guilty of the offense charged notwithstanding the fact that the affidavit might in part be true and regardless of whether the insurance policies were really issued or enforceable or whether the insurance company had power to issue policies in the State.

4. **CRIMINAL LAW: Indictments and Informations: False Affidavit: Sufficiency of Indictment.** Prosecution for making a false affidavit as to fire loss. The indictment *held* sufficient though not alleging whether the companies were corporations or partnerships.

5. **————: Perjury: False Affidavits: Defenses.** The fact that the insurance company requested defendant to make an affidavit

is not a defense in a prosecution for making a false affidavit in respect to fire loss.

6. ———: ———: ———: **Defenses.** Prosecution for making a false affidavit as to fire loss. Evidence as to the origin of the fire was properly excluded. However the fire may have started defendant would not be justified in making a false affidavit of the amount of his loss.

7. ———: ———: ———: **Evidence.** Prosecution for making a false affidavit as to fire loss. The accused was engaged in buying, storing and selling wheat. Evidence that he had bought certain quantities several months previous to the fire would not be admissible in evidence unless followed by evidence that he retained possession thereof.

8. **WITNESSES: Character Witnesses: Impeachment.** Where accused was a witness for himself and also placed character witnesses on the stand, it was proper to permit a witness who lived within a mile and a half of the accused to testify as to accused's reputation for truth and honesty in the vicinty.

9. ———: **Examination of Accused: Cross Examination.** The accused may be cross examined as to matters concerning which he testified in chief.

10. **INSTRUCTIONS: Conformity to Pleadings.** Prosecution for making a false affidavit in regard to loss by fire. The accused was charged in the indictment with making a false affidavit that he lost "about 2000" bushels of wheat. An instruction refering to a loss of 2000 bushels, which in another place inserted the word "about" was not erroneous as tending to mislead the jury to believe the accused guilty if he did lose that exact amount.

11. ———: **False Affidavits.** Prosecution for making a false affidavit. An instruction that the accused should be acquitted if he "honestly" believed the statement made was not erroneous. The use of the word "honestly" does not add to the word believe.

12. **CRIMES AND PUNISHMENTS: False Affidavit: Evidence.** Evidence considered sufficient to warrant conviction in a prosecution for making a false affidavit.

13. **CRIMINAL LAW: Verdict: What not Objectionable in.** A verdict signed "Foreman, J. H. Eagon," is not bad merely because the word "Foreman" preceded in place of followed the name.

14. ———: **Verdict: Discrepancies: When Immaterial.** Though the panel referred to in the judgment showed only "John Eagon" as a juror, a verdict signed by "J. H. Eagon," as foreman was sufficient, the trial court having opportunity for ascertaining the identity of the person who signed the verdict.

15. ———: ———: Judgment. A judgment on a verdict finding accused which directed that *capias* execution should issue was proper under Sec. 5276, R. S. 1909, the court being authorized to hold the accused in custody until payment of the fine.

Appeal from Polk County Circuit Court.—*Hon. C. H. Skinker*, Judge.

AFFIRMED.

*T. H. Douglass,* Prosecuting Attorney, for respondent.

*Rechow & Pufahl* for appellants.

ROBERTSON, P. J.—The defendant was convicted of making a false affidavit and has appealed. The indictment of the grand jury charges, so far as necessary to notice, that defendant came before S. B. Evans, then and there a notary public, "then and there contriving and intending to cheat and defraud the Hartford Fire Insurance Company, the Fire Insurance Company of Pennsylvania and the Fire Insurance Company of North America and did then and there unlawfully, willfully, corruptly and falsely before the said S. B. Evans, notary public, under oath and affirmation, voluntarily make a certain false affidavit and statement for the purpose of cheating and defrauding the aforesaid fire insurance companies by attempting to induce them, the aforesaid fire insurance companies, to pay an alleged loss on certain fire insurance policies issued by the aforesaid companies to the said L. E. Lynes on seeds, grain, flour, . . ." etc. A copy of the affidavit is set out and recites, among other things, that he lost in a fire which occurred November 25, 1914, about two thousand bushels of wheat. The indictment then charges this statement to be false and untrue.

The trial disclosed that the defendant, for some time prior to the fire, was the lessee of a mill and elevator at Humansville and that the said insurance companies issued policies to the defendant insuring him against loss by fire on his wheat therein. The fire

occurred about two o'clock on the morning of November 25, 1914, and totally destroyed the contents of the mill and elevator. In defendant's efforts to collect the insurance and as a means to that end he made the affidavit in question. The testimony of several witnesses for the State is that there was not over three or four hundred bushels of wheat in the mill and elevator on the evening of the day before the fire. The defendant and witnesses in his behalf testified that there were about twenty-five hundred bushels there at that time.

The indictment is said to be defective because (1) it does not allege that the insurance companies had any power or authority to issue policies in this State; (2) because it is not directly alleged that the policies were in fact issued; (3) because there is no allegation that the policies were in force at the time of the fire; (4) because it shows the affidavit to be true in the main and only one portion is alleged to be false; (5) because it is not alleged that defendant did not know, when he made the affidavit, that he did not have the wheat in the mill, and (6) because the indictment is so vague and uncertain as to charge no crime.

The section (4348, R. S. 1909) upon which the indictment is based reads as follows: "Every person who shall wilfully, corruptly and falsely, before any officer authorized to administer oaths, under oath or affirmation, voluntarily make any false certificate, affidavit or statement of any nature, for any purpose, shall be deemed guilty of a misdemeanor, and shall upon conviction be punished by imprisonment in the county jail not less than six months, or by fine not less than five hundred dollars."

While this section has been in our statutes since 1855, it has been before our appellate courts but a few times. In State v. Boland, 12 Mo. App. 74, a conviction was upheld and State v. Flagg, 25 Ind. 244, was cited without comment further than to refer to the holding there made that the false statement need not be of a matter material to the question involved. Attention is also there called by said court of appeals to the fact that the Supreme Court in State v. Marshall,

47 Mo. 378, 380 and 381, did not decide whether the term in said section, "for any purpose," covered affidavits not provided for by law. In the case of State v. Miller, 44 Mo. App. 159, it was held that no offense was committed under this section where a party had made a false affidavit in order to influence a stakeholder to pay defendant a gambling wager, because, as the prosecuting witness could not by an action recover the money, to convict defendant would be to punish him *"criminally* for a matter in respect of which courts will not aid the prosecuting witness *civilly,* and a majority of the court think that the courts do not sit for any such purpose." The case in State v. Breitweiser, 88 Mo. App. 648, 650, involved an information under this section of the statute, and while it is stated (p. 659) that the statute is exceedingly broad and that if an affidavit is made for any purpose it would come within the letter of the statute, yet further along on the same page it is asserted that there is "no hesitancy in saying that the affidavit made by the defendant was made in a proceeding wherein affidavits might be made and used as evidence." No question was raised or discussed there as to whether or not this latter fact might not constitute an offense under the general perjury section. This, except a casual reference to the section in a dissenting opinion in Cook v. Globe Printing Co., 227 Mo. 471, 592, 127 S. W. 332, is, so far as we can find, the only reference to this section by our appellate courts.

The Indiana Statute (1, Burns' Ann. Statute, sec. 2376, Revision 1914) remains the same as when reference was made to it in the *Boland case,* supra, and the appellate courts of that State have apparently been seldom called upon to construe this section. The only decision material to our discussion is that in State v. Malone, 174 Ind. 746, 93 N. E. 170, 172, wherein it is stated that "The gravaman of the offense defined by this section is the corrupt and willful making of a false and voluntary oath with respect to any matter, and without regard to the purpose in mind. The specific purpose or object in mind at the making of the affidavit or oath is immaterial, and an indictment need

only show .the oath alleged to be false with such certainty and particularity as to apprise the accused' fairly of the charge he is called to meet. The exact affidavit and oath alleged to have been falsely made by appellee is fully set out in this indictment, and if made as charged, his intent and purpose in making the same are no constituent elements of the offense. The verification of the matter set out in this count of the indictment appears to have been wholly voluntary, and the allegations are sufficient to constitute the offense of perjury under the statute above mentioned.''

It is not necessary for us to go further in this case than to say that the subject-matter concerning which the false affidavit is made has to do with the rights of individuals or the welfare of the public. Section 4344 relates to affidavits provided for by law and it is clear to us that said section 4348 relates to an entirely separate and distinct class of affidavits used generally in legitimate affairs and transactions. The Legislature has given certain officers power to administer oaths and it is a well known practice for persons to appear before them and make affidavits of various kinds, besides the one here involved, such as affidavits of the identity of persons in whose name in the chain of title to real estate there is a discrepancy; affidavits as to the heirs of a deceased person made for the purpose of supplying an apparent break in the title to real estate and numerous other affidavits unnecessary to mention, but which will occur to the reader. We are thus impressed with the idea that the magnitude of the ground ·covered and the transactions that may be affected by this character of affidavits are such as to demand a penalty for those who commit perjury in taking advantage of this means of making an oath.

Section 6351, Revised Statutes 1909, provides that ''Every court and judge, justice and clerk thereof, and all justices of the peace, shall respectively have power to administer oaths and affirmations to witnesses and others concerning anything or proceeding depending before them, respectively, and to administer oaths and take affidavits and depositions within their respective

jurisdictions, in all cases where oaths and affirmations are required by law to be taken.'' This section contemplates that affidavits may be made before the officers therein designated upon any one appearing before and submitting to such officer any fact to be verified by oath, and section 10178, Revised Statutes 1909, defining the powers of notaries public, provides that they may administer oaths in the same manner as clerks of courts of record and justice of the peace. To hold that the public shall not be protected from perjuries committed in taking advantage of these provisions of our law, in matters of so frequent occurrence as that involved here, would open up a field for fraud that has not heretofore been generally thought to exist.

The gist of the offense under said section 4348 is that of the falsity of the affidavit, and conceding that there must be facts connecting the use of the affidavit with some substantial and legitimate transactions we have the indictment in this case connecting its employment for the purpose of securing the payment of a loss never suffered by the defendant. It is alleged that it was so used by defendant to secure a payment of this alleged loss, which presupposes the existence of the insurance companies named, the issuance and the then effectiveness of the policies. The affidavit is set out and its materiality for the purposes for which defendant used it are clearly shown. The indictment may have been made more specific, but this being a misdemeanor the same strictness is not required as in prosecutions for felonies. [State ex rel. Zehnder v. Robertson, 262 Mo. 613, 621, 172 S. W. 6.] The indictment we hold to be good as against all objections here urged.

The argument that in larceny cases the indictment must specify, when it is alleged that the taking was from a company, whether the company is a corporation or a partnership has no place in this case. The material part of the offense consists in the falsity of the affidavit and the designation of the individuals and transactions in which it is used are necessary only, to say the most, as a means of connecting its use with some substantial transaction and the mere reference to

some substantial individual and transaction is sufficient. The offense is the same whether the companies were partnerships or corporations. There is no good reason suggested for the contention on this point in behalf of defendant and we rule it against him. [State v. Stein-kraus, 244 Mo. 152, 158, 148 S. W. 877.]

The defendant offered to prove that the representatives of the insurance companies requested defendant to make an affidavit of the alleged loss and this offer the court refused to entertain and we hold properly so. The companies had a right to request this proof of the alleged loss, and when defendant undertook to comply he was not authorized to commit perjury. A false affidavit was not requested, and could not be furnished without the party making it subjecting himself to a successful prosecution.

Defendant attempted to prove facts concerning the origin of the fire and this was properly excluded. However the fire started he would not thereby be justified in making a false affidavit of the amount of his loss.

One of defendant's witnesses testified that he had sold and delivered some wheat at defendant's mill in August preceding the fire and also just before the fire in November. The prosecuting attorney moved to strike out this testimony. The court remarked: "I think it is immaterial what he sold to him in August unless it can be followed up by proof that it remained in the mill. I don't see that it would throw any light upon the question of how much wheat he had on hand at the time the mill was destroyed by fire, but it can remain in." The court would have been justified in striking out the testimony to which reference was made, because all of the testimony was to the effect that defendant was actively engaged in buying and selling wheat between August and November, 1914, and certainly the court did not err in making the statements above quoted.

The defendant was a witness in his own behalf and also placed character witnesses on the stand. On cross-examination of one of his witnesses the prosecuting attorney asked the witness if he knew what defendant's

general reputation was for truth' and honesty in the community around Humansville among the people that he did business with. The defendant objected to the question as calling for incompetent testimony and the court overruled the objection. Then the examination proceeded and the witness testified that he lived about one mile and a half from Humansville; that defendant bought wheat there and that he knew the defendant's "general reputation around Humansville for two or three miles, for truth and honesty," and that he called it bad. There was no further objection than as above noticed and the statement of the facts, without comment, we think, justifies the holding that no error is thereby shown.

Many objections are made to the cross-examination of the defendant. He testified to the amount of wheat he lost and all of the examination to which objections are made related to facts bearing directly upon this issue, hence there was no error committed in overruling the objections.

Complaint is made of instructions given and refused, but as the objections are clearly unwarranted we do not feel justified in reviewing them further than to state that the one most insisted upon is as to a reference in an instruction to exactly two thousand bushels of wheat as having been the amount he must have honestly believed he lost, when the indictment charges he swore in the affidavit he had only *about* that amount. The instruction in another place did use the word "about" and when read as a whole and taken in connection with all of the instructions the jury could not have possibly been misled to his hurt.

In that instruction, as well as in one other, the jury was told that if the defendant *honestly* believed that he had the amount of wheat mentioned in his affidavit in the mill when it burned he should be acquitted. Objection is made to this word as putting an unfair coloring on the issue, but we cannot appreciate the criticism. While it may be said that the word "believed" needed no such modification yet we cannot see that the meaning of the word was thereby enlarged and we also

think the jury understood what the defendant should believe before making the affidavit in order to escape the penalty of the statute.

It is said the evidence so overwhelmingly points to defendant's innocence that we should order him discharged. We cannot so hold. Eight witnesses testified to facts justifying the conclusion that there were not over five hundred bushels of wheat belonging to defendant in the mill when it burned. Some of these witnesses refused to make affidavits for defendant giving as their reason that they did not know how much wheat was in the mill when it burned. On the trial they did not state that they knew, but were able to testify to facts that proved to the satisfaction of the jury that there were not near two thousand bushels. One witness testified that defendant stated to him that he "would like to have you men say there was 2500 bushels of grain in the mill." We cannot find that the defendant denied this in his testimony. True, witnesses testified for defendant to facts that corroborated his contention that there were about 2000 bushels in the mill when the fire occurred, but we cannot hold, owing to the verdict of the jury, that the defendant is not guilty.

It is said the verdict is bad. It is signed: "Foreman, J. H. Eagon." If the name had appeared before or above the word "Foreman" the verdict, it is said, would have been good in form. The same fact is announced when we read it in either of the two ways. It it also said to be bad because the panel referred to in the judgment shows no Eagon on the jury other than one designated as John. The trial judge had the opportunities for ascertaining the identity of the person who signed the verdict and in the absence of proof to the contrary we cannot overthrow the solemn records of the court and hold that the judge and other officers did not do their duty.

The punishment fixed by the jury was a fine of $500 and the judgment concludes that "capias execution shall issue." It is said that the judgment should not have so provided, or if it did that it should have

194 M. A.—13

been conditioned that the defendant pay the fine assessed. Section 5276 provides that defendant "shall be imprisoned until the sentence is fully complied with and all costs paid, unless he be sooner discharged in the manner hereinafter provided." The judgment in effect orders that the defendant stand committed until the fine and costs are paid and meets the requirements of the statute and what is said in State v. Ulrich, 96 Mo. App. 689, 693, 70 S. W. 933. The judgment cannot be disturbed on this objection.

Finding no reversible error the judgment must be and is affirmed. *Farrington* and *Sturgis, JJ.,* concur.