## HARRISON *v.* STATE OF INDIANA

[No. 28,783. Filed June 26, 1952. Rehearing
denied October 6, 1952.]

150

*E. Miles Norton,* of Crown Point, *Floyd W. Burns, Frank A. Symmes, Charles W. Symmes, Wray E. Fleming,* all of Indianapolis, and *Cadick & Burns,* and *Symmes, Fleming & Symmes* (of counsel), for appellant.

*J. Emmett McManamon,* Attorney General; *William T. McClain* and *John Ready O'Connor,* Deputy Attorneys General, for appellee.

BOBBITT, J.—Appellant was indicted for perjury under Acts of 1927, Ch. 203, §8; p. 580, §10-3802, Burns' 1942 Replacement, tried by jury, found guilty as charged and sentenced to imprisonment in the Indiana State Prison for a term of not less than one [1] nor more than ten [10] years.

Seven errors are assigned, but of these we deem it necessary to consider only three. (1) The trial court

erred in overruling appellant's motion to quash the indictment; (2) The trial court erred in overruling appellant's written challenge to the array; and (3) The trial court erred in overruling appellant's motion for a new trial.

Appellant, an attorney at law, was Trustee by appointment of the Lake Superior Court of certain lots which had been purchased at a sheriff's sale for the benefit of the holders of certain Barrett Law bonds and the indictment[1] charges him with voluntarily and wilfully making a false. and corrupt affidavit in connection with the Trustee's final report.

We shall consider the errors assigned in the order named.

*First:* Did the trial court err in overruling appellant's motion to quash the indictment? The motion to quash is based on two statutory grounds: (1) the facts stated do not constitute a public offense; and (2) the indictment does not state the offense with sufficient certainty.

---

[1] The indictment returned against the appellant on the 30th day of September, 1948, omitting formal parts reads:

The grand jury of Lake County, in the State of Indiana good and lawful men, duly and legally impaneled, charged and sworn to inquire into felonies and certain misdemeanors in and for the body of said County of Lake, in the name and by the authority of the State of Indiana, on their oaths present that C. Ballard Harrison, late of said county, on the 29th day of November, 1946, at the County and State aforesaid, did then and there voluntarily come before Armina Mitchell who was then and there a duly commissioned Notary Public of said County and State having competent authority to administer an oath, and the said C. Ballard Harrison then and there, in due form, was voluntarily sworn by, and took his corporeal oath before said Armina Mitchell as such Notary Public, and being so sworn as aforesaid did wilfully, corruptly, falsely and feloniously make his voluntary affidavit and statement in writing as follows to-wit:

Appellant contends that the sufficiency of the indictment herein may be tested by the answer to the question: Can the facts properly alleged be true and the appellant be innocent of the offense charged? If the answer to this question is in the affirmative, the indictment is bad; if in the negative, the indictment is good.

*State* v. *Green* (1935), 207 Ind. 583, 194 N. E. 182; *Burnett* v. *State* (1929), 201 Ind. 134, 166 N. E. 430.

Two acts of false swearing are charged in the indictment:

(1) That appellant swore that he received from the sale of certain lots to Herbert O. Berg and Jeanette F. Berg the sum of $500; whereas in truth, and in fact, the Bergs paid $1500 for said lots and appellant was chargeable, as Trustee, with the receipt of $1500 instead of $500, as stated in the report, and (2) The other act of false swearing is that the report shows appellant charged himself with receipts from Central Construc-

"STATE OF INDIANA ⎰ ss:
COUNTY OF LAKE  ⎱

IN THE LAKE
SUPERIOR COURT
JULY TERM, 1946
CAUSE No. 52355
ROOM No. 1

"ALVA O. GILKISON, et al.,      ⎱ TRUSTEE'S
v.                               ⎰ SECOND
LAKE INVESTMENTS, INC., et al. ⎰ FINAL
                                  REPORT

"Comes now C. Ballard Harrison, as Trustee, by appointment on June 13, 1941, and for his second and final Trustee's Report represents:

"1. That on the date of the approval of the first Trustee's Report, he was chargeable with the following real estate:

"Lots 2, 3, 4, 6, 7, 8, 18 and the West 7 (or 8) feet of Lot 19, in Block 1;

"Lots 10, 11, 13, 15, 16, 17, 18, 19, 20 and 21 in Block 2; Lots 11, 13, 14, 15, 16, 17, 18, 20, and 21 in Block 3; and

tion Corporation for the sale of certain lots including lots 2, 3, 4, 6, 18, and the west 8 feet of lot 19, in Block 1, in Woodlawn Terrace Addition to the city of Hammond, Lake County, Indiana; whereas in truth, and in fact, appellant did not sell said lots in Block 1 to Central Construction Corporation, and that none of the $7,800 received was a payment for said lots, but they were actually and in fact transferred to one John G. Phrommer by including them, without consideration, in a deed conveying other lots to said Central Construction Corporation, which company subsequently transferred said lots in Block 1 to the said Phrommer without consideration.

The report, on its face, imports that appellant, as Trustee, received a part of said $7,800 as consideration for said lots in Block 1, while it is alleged in the indictment that, in truth and in fact, they were transferred without consideration.

Measured by the rule upon which appellant relies, if the facts as alleged in either act of false swearing are true, appellant cannot be innocent of the crime charged against him, and such facts are sufficient to constitute a public offense. It is not necessary that the statements be false in all respects.

*State* v. *Jones* (1916), 185 Ind. 234, 113 N. E. 755, 1 A. L. R. 1136.

We are not impressed with appellant's argument that the report is literally true. It may be true in the sense used in argument of counsel, but if the allegation that

the South 17½ feet of Lot C and the North 10 feet of Lot D in the re-subdivision of Lots
1 to 9 and 22 to 30, inclusive, Block 3;
as marked and laid down on the recorded plat of Woodlawn Terrace Addition to the City of Hammond, Lake County, Indiana;

the Bergs paid $1500 instead of $500 as reported is true, then the report which shows the receipt of only $500 is factually false.

This being a final report by appellant, as Trustee, he was chargeable with the full amount received from the sales of said lots. If, as appellant contends, the report is literally true because he did actually received $500 from the sale of said lots, and the legal title to the other lots in question went to Central Construction Corporation, yet the affidavit states it to be factually true that appellant, as Trustee, received $1500 from Bergs for the sale of said lots to them and received nothing from Central Construction Corporation for the lots in Block 1 which the report shows were transferred as a part of the consideration for the $7,800 received from Central Construction Corporation.

If appellant's argument were followed to its logical conclusion, he could have reported receipts of $100, or any other amount, from the Bergs and his statement would have been literally true and perjury could not be charged upon the statement. If this were the accepted rule, any fiduciary might hold out part of the funds received, reporting only as much as he chose to report, and because he had actually received the amount reported his statement would then be literally true and he would not be subject to prosecution for perjury even though he had, in fact, received a much greater amount than was reported. We cannot believe the statement from 70 C. J. S., Perjury, §8(b), p. 464, upon which appellant relies, is subject to such

that he was charged with no cash on hand after the disbursement of the allowances ordered on said date of December 15, 1944.

"2. Pursuant to several orders of this Court, he has sold and transferred all of said remaining real estate.

"3. He charges himself with the following receipts:

an interpretation. Appellant's position is untenable and the rule as stated in 70 C.J.S., *supra,* is not applicable to the facts in the case at bar.

The indictment herein charges the commission of perjury by making a voluntary affidavit. Such an indictment is sufficient to withstand the motion to quash if it shows the oath alleged to be false with such certainty and particularity as to inform the accused fairly of the charge he is called upon to meet.

*State* v. *Malone* (1910), 174 Ind. 746, 93 N. E. 170.

70 C. J. S., Perjury, §32 (a), p. 495.

The indictment upon which appellant was arraigned and convicted charged the making of a false and voluntary oath in respect to the amount of money realized from the sale of the lots to said Bergs, and with respect to the receipt of a consideration for said lots in Block 1 transferred to Central Construction Corporation. This was sufficient to inform appellant fairly of the charge he was called upon to meet. The trial court did not err in overruling appellant's motion to quash the indictment.

*Second:* Did the court err in overruling appellant's (defendant's) written challenge to the array of jurors

| | | |
|---|---|---|
| "April 2, 1946 | Herbert O. Berg and Jeanette F. Berg for Lots 7 and 8, Block 1, Woodlawn Terrace ........ | $ 500.00 |
| "April 2, 1946 | Raymond Rozhon and Lorraine Rozhon for S. 6 feet of No. 10 feet of Lot D in the resubdivision of Lots 1 to 9 and 22 to 30 in Woodlawn Terrace ........ | $ 60.00 |
| "April 2, 1946 | John F. Malocina and Marian Malocina for S. 17½ feet Lot C and the W. 4 feet of Lot D in the resubdivision of Lots 1 to 9 and 22 to 30, Block 3, Woodlawn Terrace ................... | $ 215.00 |

drawn to try the case? Appellant contends that the jury commissioners arbitrarily excluded attorneys at law from the list of prospective jurors and, because of this action, he was denied equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution.

Appellant has failed to call our attention to any authorities in support of this contention, and a thorough independent search of the decided cases fails to disclose that the question here raised has ever been decided by any Appellate tribunal, either in the state or federal courts.

Acts of 1939, ch. 132, §1, p. 656, §4-3304, Burns' 1946 Replacement, provides for the selection of grand and petit jurors and, among other things, provides that the jury commissioners "In making such selections, . . . shall not select the name of any person . . . who is to them known to be interested in or has a cause pending which may be tried by a jury to be drawn from the names so selected."

This is a clear expression of the intent of the legislature that any person who might be interested in any case which might be tried by a jury selected from the names drawn should be excluded from the list of prospective jurors.

"November 26, 1946   Central Construction Company for Lots 2, 3, 4, 6, 18 and the W. 8 feet of Lot 19, Block 1; Lots 10, 11, 13, 15, 16, 17, 18, 19, 20 and 21, Block 2; Lots 11, 13, 14, 15, 16, 17, 18, 20 and 21, Block 3, Woodlawn Terrace. . . .   $7,800.00

"TOTAL RECEIPTS . . . . . . . . . . . . . . . . . . . . . . . . . . . $8,575.00

"4. That a plat of said subdivision appears attached to the first current report.

An attorney at law is an officer of the Court, *Cole v. Myers et al.* (1941), 128 Conn. 223, 21 A. 2d 396, 136 A. L. R. 226; *Re Keenan* (1934), 287 Mass. 577, 192 N. E. 65, 96 A. L. R. 679; 5 Am. Jur., Attorneys at Law, §6, p. 264; and as such he is interested in and is an integral part of the judicial machinery which administers justice.

This court has held that jury commissioners must exercise their own judgment and discretion in selecting names of prospective jurors, but they may not "arbitrarily refuse to consider any class or classes of persons." *Dixon v. State* (1946), 224 Ind. 327, 67 N. E. 2d 138; *Swain v. State* (1939), 215 Ind. 259, 18

"5. Your trustee has made the following expenditures in the administration of this Trust and in the perfection of titles to said real estate so sold, and claims credit for the following:

| | | | |
|---|---|---|---|
| "4/ 3/46 | Frank R. Martin, Treasurer of Lake County, Taxes for November 1943, all of 1944 and all of 1945 | | $ 488.94 |
| "4/ 2/46 | Berg sale | | |
| | Commission to John Phrommer | $ 50.00 | |
| | Taxes | 42.84 | |
| | Title policy, Calumet Title | 57.50 | |
| | | 150.34 | 150.34 |
| "4/ 2/46 | Malocina sale | | |
| | Commission to John Phrommer | 21.50 | |
| | Title Policy, Calumet Title | 30.00 | |
| | | 51.50 | 51.50 |
| | Calumet Title Company, master policy | | 50.00 |
| "11/26/46 | Central Construction Company sale | | |
| | Title policy, Calumet Title Co. | 52.00 | |
| | Recording deed | 2.90 | |
| | Federal stamps | 8.50 | |
| | Commission to John Phrommer | 780.00 | |
| | | $843.40 | 843.40 |

N. E. 2d 921; *Walter* v. *State* (1935), 208 Ind. 231, 195 N. E. 268, 98 A. L. R. 607; *State ex rel. Passer* v. *County Board of Renville County* (1927), 171 Minn. 177, 213 N. W. 545, 52 A. L. R. 916.

It has been held that deputy sheriffs and other law enforcing officers, because of their interest in law enforcement, have in the absence of special statutory provision therefor, properly been excluded from jury service. *Gaff* v. *State* (1900), 155 Ind. 277, 58 N. E. 74, 80 Am. St. Rep. 235.

This court held in *Block* v. *State* (1885), 100 Ind. 357, that a deputy prosecuting attorney was incompetent as a juror and the verdict and judgment of the court was reversed because the deputy prosecuting attorney was permitted to sit on the jury which rendered the verdict against the defendant. At pp. 361, 362, (100 Ind.) this court said:

"Where the Legislature, without violating some guaranteed right of the citizen, has assumed to declare who shall be a competent juror with reference to some particular objection which might otherwise be urged against him, the declaration of the Legislature is binding upon the courts, but in the absence of any legislative declaration on the subject, the competency of each particular person called as a juror becomes a question for judicial decision."

|  |  |
|---|---|
| Ralph N. Pachter, Tax title and dismissal of case, Lots 11, 13, 15, 16 and 17, Block 3, Woodlawn Terrace | 281.90 |
| Hoosier State Bank, charges for checking account ............... | 2.11 |
| "TOTAL DISBURSEMENTS .......... | $1,908.97 |
| RECAPITULATION | |
| "TOTAL RECEIPTS ................. | 8,575.00 |
| "TOTAL DISBURSEMENTS .......... | 1,908.97 |
| "BALANCE ......................... | $6,666.03 |

We approve the reasoning here expressed; it is sound and applies with equal force to the circumstances here under consideration. While attorneys at law are not public officials such as sheriffs, prosecutors and police officers, they are so much a part of the court in which cases are to be tried that they may justifiably be excluded upon the same ground as police officers, or any other person who might have a public interest in the case.

This court will take judicial notice of the fact that the established custom in Indiana is to excuse attorneys from jury service. We have no doubt that had the names of attorneys in Lake County been included in the list of prospective jurors, and the names of one or more such attorneys drawn on the panel from which the jury that tried appellant was selected, they would have been excused and would not have been permitted to serve.

The principle upon which all of the cases pertaining to the exclusion of certain classes from jury lists rests is the denial of equal protection of the law. We are unable to see, in light of the custom which prevails in Indiana of excusing attorneys from jury service, where appellant's rights have in any way been prejudiced, or where he has in any way been denied

"6. Your trustee has been active in the management of this Trust, has prepared this Trustee's report and order, has spent considerable time in checking taxes and making payments thereof, has conferred with the attorney for the Trustee and John Phrommer, as sales agent, has spent a considerable amount of time with a possible redemptioner, has had numerous inquiries and telephone calls from others concerning said real estate, which inquiries did not result in sales but did take an appreciable amount of time of your Trustee; that your Trustee believes that a reasonable allowance of ten per cent (10%) of the gross sales price of said real estate, to-wit: $857.50, should be allowed for his services herein.

protection of the law which is afforded to other citizens of this state. We will not presume that appellant was prejudiced by the action of the jury commissioners in excluding names of attorneys at law from the jury list in the face of circumstances shown by the record which demonstrate a lack of prejudice. Cf. *Walter* v. *State* (1935), 208 Ind. 231, 237, 195 N. E. 268, *supra*.

While there is no statute in Indiana exempting attorneys from jury service, we believe that because of their quasi judicial nature and their relation to our ■ courts in the administration of justice, they do not constitute such a class as is contemplated by the authorities which hold that the exclusion of certain "classes" from jury lists is a denial of equal protection of law. For the reasons above stated, the judgment in

"7. Your Trustee further represents that he has been required to retain an attorney to represent him in the preparation of petitions for authority to sell real estate and that said attorney, Donald C. Gardner, has conferred with the sales agent and with your Trustee in arranging and negotiating for the sale of the said real estate and that the reasonable value of the services of the attorney for the Trustee is five per cent of the gross sales price of said real estate, to-wit: $478.75.

"8. On December 15, 1944, this Court allowed a sum of Nine Hundred ($900.00) Dollars to Carl A. Huebner and Clifford A. Etling for services in reduction of taxes, of which a sum of $600.00 has been paid, so that your trustee should have authority to pay the balance of $300.00 of said allowance.

"9. The attorneys for the class plaintiffs in filing the several foreclosure actions and prosecuting said action to judgment were allowed a partial fee of $450.00 in the previous report; that your Trustee believes that an additional $450.00 should be allowed to said attorneys, of which sum 3.3% should be paid to the attorneys for the class plaintiffs on assessment roll 1281, 66.3% to the attorney for the class plaintiffs on assessment roll 1498 and 30.4% to the attorney for the class plaintiffs on assessment roll 1535.

"10. The Trustee, in the event that said items are allowed, will have a balance of $4,571.78 to pay to the Treasurer of the City of Hammond to be paid out by said Treasurer to the owners

the case at bar will not be disturbed because the jury commissioners of Lake County arbitrarily excluded attorneys from the list of prospective jurors.

Appellant next contends that his motion challenging the array should have been sustained because the names of prospective jurors were taken from the tax duplicates, and not from the tax duplicates and tax schedules of the county as the statute provides, and further that there is no evidence that the jury commissioners determined whether or not such prospective jurors were legal voters and citizens of the United States, or that they were freeholders or householders of the county.

and holders of bonds and coupons issued by the City of Hammond, pursuant to improvement resolutions Nos. 1281, 1498, and 1535 of said city, according to their respective interests, which should be determined as follows:

"FIRST: Said amount shall be pro-rated among the several assessment rolls, according to the ration of installment delinquencies of the real estate rendered in judgment herein on June 13, 1941, including principal, interest and interest on delinquency to said date.

"SECONDLY: The amount so allocated to each assessment roll shall be pro-rated and applied to the payment of bonds and coupons according to the ratio of installment delinquency of said real estate in each annual series as to bonds and semi-annual series as to coupons.

"THIRDLY: The amount so allocated to each installment series of bonds and coupons shall be pro-rated among said bonds and coupons and paid to the owners and holders surrendering the same for endorsement and payment, according to the ratios which the unpaid balance of the face amount of said bond or coupons bears to the total outstanding bonds or coupons in said Series.

"WHEREFORE, your Trustee prays that this Final Report be approved, the credits therein claimed be allowed, the fees and expenses herein set forth be ordered paid and the balance of the proceeds ordered paid to the Treasurer of the City of Hammond for the use and benefit of the parties entitled thereto.

(Signed) "C. Ballard Harrison
Trustee

Acts of 1937, ch. 156, §2, p. 839, §4-3321, Burns' 1946 Replacement, provides as follows:

"The provisions of this act [§§4-3320—4-3324] shall be construed to supplement and not to repeal the statutory provisions for special juries, for juries by agreement, for juries from other counties, for struck juries, and for special venires. This act shall be construed liberally, to the effect that no indictment shall be quashed, and no trial, judgment, order or proceeding shall be reversed or held invalid on the ground that the terms of this act have not been followed, unless it shall appear that such noncompliance was either in bad faith or was objected to promptly upon discovery and was probably harmful to the substantial rights of the objecting party."

There is no evidence in the record that this noncompliance with the strict letter of the statute by the jury commissioners was in "bad faith" or that such action was "probably harmful to the substantial rights" of the appellant. The irregularities herein complained of come within the provisions of said §4-3321, *supra,* and do not constitute reversible error.

Appellant further contends that the judgment in this case should be reversed because the jury commissioners excluded from the jury list all individuals whose sur-

"STATE OF INDIANA⎱ ss: COUNTY OF LAKE ⎰

"C. Ballard Harrison, being first duly sworn upon his oath, deposes and says:

"That he is the Trustee in the above entitled cause; that he has read the foregoing Trustee's Report and that the matters and things set out therein are true.

(SEAL)                    (Signed)    "C. Ballard Harrison

"Subscribed and sworn to before me, a notary public, this 29th day of November, 1946.

                    (Signed)    "Armina Mitchell

"My Comm. Expires: 1:25:48.

name began with the letters of the first half of the alphabet (A to K).

The Acts of 1883, ch. 38, §1, p. 44, §4-3318, Burns' 1946 Replacement, provides that it shall not be lawful for jury commissioners to select any persons to serve as a juror in any of the courts of the county who has served as a juror during the year immediately preceding such selection. It is clearly apparent from the evidence here that in order to fully comply with the provisions of this statute the jury commissioners of Lake County selected the names of jurors in one year from the first half of the alphabet and in the next year from the second half of the alphabet. It occurs to us that there could be no more effective way of complying fully with said statute. Persons whose surnames begin with the letters A to K are not distinguished by any common characteristic from any other persons; they are not ranked together for any common purpose, nor do they possess any particular attribute in common, and such persons cannot be considered as a "class" within the meaning of the authorities cited by appellant in support of his contention. 14 C. J. S., Class, p. 1193.

"Whereas the facts therein stated were false and said affidavit was falsely and corruptly made; that in truth and in fact said Herbert O. Berg and Jeanette F. Berg paid $1,500 instead of $500.00 as falsely stated in paragraph 3 of the foregoing false writing, for those lots therein described and he was chargeable with the receipt of the said $1,500.00 instead of the $500.00 therein stated; and further in truth and in fact said C. Ballard Harrison as such trustee did not sell to Central Construction Company Lots 2, 3, 4, 6, 18 and the W. 8 feet of Lot 19, in Block 1 in Woodlawn Terrace as falsely stated in paragraph 3 of the foregoing false writing, but on the contrary he had falsely and corruptly conveyed the title to said lots to one John G. Phrommer by the secret and fraudulent device of including said lots without consideration in a deed conveying other lots to said Central Construction Company, after which

Appellant further contends that the judgment herein should be reversed because the jury commissioners did not comply with the provision of the statute requiring jurors to be selected as nearly as possible in equal numbers from each county commissioner's district. The record discloses that the jury commissioners, after their appointment, were given 2500 blank cards for the purpose of securing an equal number of names to be placed in the jury box. The cities, towns and townships in Lake County were then broken down by the jury commissioners in proportion to the entire population of the county. The names were then selected from the tax duplicates of each city, town and township in the ratio which the population of the city, town and township bore to the total population of the county, thus giving each city, town and township its proportionate share of the 2500 names selected. It seems to us that the jury commissioners in this instance could have pursued no surer method of obtaining equal numbers of jurors from each commissioner's district than was followed. It was a substantial compliance with the provision of the statute and it cannot be said that the rights of appellant were prejudiced by such action. *Hitch* v. *State* (1936), 210 Ind. 588, 4 N. E. 2d 184.

said Central Construction Company had deeded said lots back to said Phrommer without consideration, after which said Phrommer had sold and conveyed said lots to an actual purchaser and the purchase price thereof had then secretly and corruptly been divided between said Harrison, said Phrommer and one Donald C. Gardner;

"That in truth said C. Ballard Harrison made the foregoing false writing and swore to same by his aforesaid false oath and affidavit for the corrupt and felonious purpose of concealing from said court and its records the fact that he, together with said Phrommer and said Gardner were misappropriating to themselves the aforesaid land held by said Harrison as Trustee and the proceeds thereof; said C. Ballard Harrison then and there well knowing that the said matters so as aforesaid by

Other questions raised by appellant's motion challenging the array so clearly indicate that they come within the provisions of §4-3321, *supra*, that the do not, in our opinion, merit detailed discussion.

*Third:* The trial court erred in overruling appellant's motion for a new trial. Two of the grounds assigned therefor are that the verdict of the jury is contrary to law and it is not sustained by sufficient evidence.

Evidence pertaining to the sale of lots to Bergs (the first alleged act of false swearing) was withdrawn from the jury, and we shall consider only the evidence most favorable to appellee pertaining to the statements in appellant's report as Trustee concerning the transaction with Central Construction Corporation as it applies to lots 2, 3, 4, 6, 18, and the west 8 feet of lot 19, in Block 1, in Woodlawn Terrace.

Considering the evidence most favorable to appellee, an examination of the record discloses that a petition for the sale of real estate by appellant, as Trustee, was filed October 14, 1946. Said petition recites that the Trustee had an offer from Central Construction Corporation for the purchase of certain lots, including said lots in Block 1, Woodlawn Terrace, for the sum of $7,800. An order of sale was entered on the same day on which the petition for sale was filed authorizing the sale of all of the real estate included in the petition for the sum of $7,800. Also, on the same day a deed which was dated September 28, 1946, transferring title to said lots in Block 1 and other real estate, was approved by the court. On October 19, 1946, a quit-claim deed showing a consideration of less than $100 was executed from Central Construction Corporation to one John G. Phrom-

him deposed and declared to be true were then and there false; contrary to the form of the statute in such cases made and provided and against the peace and dignity of the state of Indiana."

mer for said lots 2, 3, 4, 6, 18, and the west 8 feet of lot 19, in Block 1, in Woodlawn Terrace. The secretary of Central Construction Corporation testified that the company paid nothing to anyone for said lots in Block 1, and an examination of the books of the company disclosed that nothing had been received from Phrommer in payment of the lots which were transferred to him by quit-claim deed as above mentioned.

The evidence further discloses that appellant, testifying in a civil case in Porter County, Indiana, prior to the trial of the case at bar, admitted that he personally received $300 as his part of the settlement from Phrommer from the sale of said lots in Block 1. He testified that he cashed this check personally and made no account of the receipt thereof as Trustee. Appellant further testified that, on November 26, 1946, he learned that the Central Construction Corporation had conveyed said lots in Block 1 to Phrommer and at that time "I was cut into the deal." Three days later, on November 29, 1946, he filed his final report as Trustee. His testimony further discloses that he was to get one-third of the profits from the sale of all of the lots in Block 1 and that he received two checks in addition to the one above mentioned, one in the amount of $256, and another in the amount of $117.17.

There is an abundance of circumstantial evidence in the record from which the jury might properly infer that appellant included said lots in Block 1 in question in the deed to Central Construction Corporation without consideration, and subsequently made a verified statement showing that said lots were sold to said company for a consideration. There is also sufficient evidence from which the jury might properly infer that the lots were actually conveyed to Phrommer by the device of including them in the deed

to the Central Construction Corporation without consideration as charged in the indictment. The verdict of the jury, or the decision of the trial court, will not be disturbed if it is sustained by any evidence of probative value or any inferences which may be properly drawn therefrom. *Mattingly* v. *State* (1952), 230 Ind. 431, 104 N. E. 2d 721; *Hansen* v. *State* (1952), 230 Ind. 635, 106 N. E. 2d 226.

There is sufficient evidence in the record before us to sustain the verdict of the jury, and it is not contrary to law.

As a further ground for a new trial appellant contends that the court erred in overruling his objections to a statement made by the chief deputy prosecuting attorney on the *voir dire* examination of a prospective juror in the presence of the panel, and in overruling appellant's motion to discharge the jury. The question of the prosecuting attorney and the statement of the court and defense attorney in connection therewith are as follows:

"Q. The indictment when I read it to you, will disclose he perjured a certain written paper and he stole a lot of money from the Bondholders—" and whereupon the following statements were made by counsel and the court:

"Mr. Norton, attorney for defendant, interrupting, 'The defendant objects, your honor, I don't think he has a right to say this man stole a lot of money, he has that twice now.'

"Mr. Stanton: Why, the indictment says so, he has been injecting politics in this case all along.

"Mr. Norton: He says I brought politics into this case. Why, your honor, I have been keeping away from that all the way through and when he says this man stole money I am not going to sit here and say nothing because the indictment does not charge this man stole money, it is a perjury charge and perjury only.

"Mr. Stanton: The indictment says he falsely and corruptly swore to a false statement and I am going to show he did it for a corrupt motive for his own benefit. The indictment reads that he reported to the Court the Bergs paid $500.00 for the lots.

" 'Whereas the facts therein stated were false and said affidavit was falsely and corruptly made; that in truth and in fact said Herbert O. Berg and Jeanette F. Berg paid $1,500.00 instead of $500.00 as fasely stated in paragraph 3 of the foregoing false writing, for those lots therein described and he was chargeable with the receipt of the said $1,500.00 instead of the $500.00 therein stated; and further in truth and in fact said C. Ballard Harrison as such trustee did not sell to Central Construction Company Lots 2, 3, 4, etc.' is what the indictment says.

"Mr. Norton: The indictment didn't come out and say he got the money, they don't say that the money was paid to someone else and they won't prove it, they come in with a blanket charge and then come in and tell the Jury that he stole this money. The indictment don't say he got that $1,500.00 and they can't prove it. I intend to try this case fairly and so far I have been fair.

"Mr. Stanton: I am going to prove it, that's what I am here for.

"The Court: I want to tell the Jury this Defendant is not charged with stealing any money, the charge against him is prejury, but as far as the corrupt motive in the case is, in the indictment it is based on the purpose of getting this money and it says in this indictment that he did it 'for the corrupt and felonious purpose of concealing from said Court and its records the fact that he, together with said Phrommer and said Gardner were misappropriating to themselves the aforesaid land held by said Harrison as Trustee and the proceeds thereof.'

"Mr. Norton: But your honor, nothing is said about this Defendant stealing any money.

"Mr. Stanton: Falsely and corruptly says it is stolen.

"Mr. Norton: On that statement we ask the jury be discharged.

"Mr. Stanton: He did get the $1,500.00.

"Mr. Norton: You won't prove it.

"Mr. Stanton: I say I will.

"The Court: Well, I think it charges here, 'which said Phrommer had sold and conveyed said lots to an actual purchaser and the purchase price thereof had then secretly and corruptly been divided between said Harrison, said Phrommer and one Donald C. Gardner.' I will have to overrule your objection Mr. Norton.

"Mr. Norton: That is after they claimed he committed perjury, it was after that they charged perjury, if anybody got any money surely he didn't get it.

"Mr. Stanton: That is my theory and he did like the indictment says.

"The Court: The charge is perjury, I want to tell the Jury that, but as to the element of corruption, that is based on the allegation here that the money was kept or participated by the Defendant. I will overrule the objection and the motion to discharge the jury."

In support of this contention appellant relies upon the case of *Bolden* v. *State* (1927), 199 Ind. 160, 155 N. E. 824, in which the prosecuting attorney, in his opening statement to the jury, recited a list of former convictions of the defendant. This court at p. 164, there said: "In a criminal action, it is reversible error for a court, over objection, to permit a prosecuting attorney in his opening statement to attack the character of the accused by charging the commission of other crimes." In the Bolden case the state did not attempt to justify the statement of the prosecuting attorney, and the trial court refused at the time to instruct and admonish the jury to disregard the alleged prejudicial statement. We think the case at bar is clearly distinguished from the Bolden case, not only in the degree of alleged misconduct of the prosecuting attorney in the Bolden case, and

the chief deputy prosecuting attorney in the case at bar, but also in the fact that in the Bolden case the court refused to instruct the jury to disregard the objectionable language used by the prosecuting attorney, while in the case at bar the court admonished the jury that appellant was not charged with stealing money, that the charge against him was perjury.

"The extent to which the defendant's counsel or the prosecuting attorney may go in the examination of a person called as a juror is not governed by any fixed rules in this state; much rests in the discretion of the court as to what questions may or may not be answered; but in practice very great latitude is and generally ought to be indulged." Ewbank's Cr. Law, 2nd Ed., Section 476, p. 312.

The reasoning of this court in *Blume* v. *State* (1900), 154 Ind. 343, 56 N. E. 771, involving a question of misconduct of the prosecuting attorney, applies with equal force to the facts here under consideration. At p. 356 it is said:

"But we are inclined to think that misconduct of the character alleged on the part of the attorney for the State does not in every instance constitute such incurable error as, *ipso facto*, entitles a defendant to a new trial, even where the question is properly reserved and presented. It must be presumed that the jury are men of sense, and that they will obey the admonition of the court when told that they must not permit the reference to the failure of the defendant to testify, to influence their minds. In most other instances, when the objection to incompetent testimony, the use of improper language, or other misconduct on the part of counsel, is sustained, and the jury are promptly and sufficiently advised upon the question so presented, it is held that the party injured has obtained all the relief which he can justly claim. While a violation of the statute forbidding comment upon, or reference to the failure of a defendant in a criminal cause to

testify, is inexcusable on the part of the offending attorney, and deserving of the severest censure of the court, we do not think that it should, in all cases, have the extreme effect of arresting the cause, and compelling the court to grant a new trial, where reasonable and prompt measures are taken by the court to prevent any injurious effect from such unprofessional and indefensible conduct."

While in the case at bar the conduct of the deputy prosecuting attorney may have deserved censure of the court, yet under the circumstances and in view of the admonition of the court at the time, we do not believe the error, if any, sufficient to compel the granting of a new trial. *Anderson et al.* v. *State* (1897), 147 Ind. 445, 452, 46 N. E. 901; *Bessette* v. *State* (1884), 101 Ind. 85.

Certain questions raised by appellant's motion for a new trial are waived because of the failure of appellant to discuss them in his brief and to cite authorities or give reasons why such alleged acts constitute error, *Hansen* v. *State* (1952), 230 Ind. 635, 106 N. E. 2d 226, *supra*; and, in view of the conclusions which we have reached, it is not necessary to consider the other questions so raised.

Finding no reversible error, the judgment of the trial court is affirmed.

Judgment affirmed.

Draper, J., not participating.

NOTE.—Reported in 106 N. E. 2d 912.