**Ralph D. MOORE, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 3–680A178.**

Court of Appeals of Indiana,
Third District.

Nov. 17, 1981.

Rehearing Denied Feb. 4, 1982.

John F. Hoehner, Valparaiso, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

Appellant, Ralph Moore, was tried by jury and convicted of burglary.

His first challenge attacks the petit jury selection process in Porter County.

The statute covering jury selection provides in pertinent part:

"Said commissioners shall immediately, from the names of legal voters and citizens of the United States on the latest tax duplicate and the tax schedules of the county, examine for the purpose of determining the sex, age and identity of prospective jurors, and proceed to select and deposit, in a box furnished by the clerk for that purpose, the names, written on separate slips of paper of uniform shape, size and color, of twice as many persons as will be required by law for grand and petit jurors in the courts of the county, for all the terms of such courts, to commence with the calendar year next ensuing. Each selection shall be made as nearly as possible in proportion to the population of each county commissioner's district. In making such selections, they shall in all things observe their oath, and they shall not select the name of any person who is not a voter of the county, or who is not either a freeholder or householder, or who is to them known to be interested in or has cause pending which may be tried by a jury to be drawn from the names so selected."

IC 33–4–5–2.

Moore established that the names of prospective petit jurors in Porter County are selected strictly from the real property tax assessment rolls. Exhibits and testimony introduced and not factually disputed by the state disclosed that while persons in the 18 to 24 year old age bracket constituted approximately 21.5% of the adult population of Porter County between 1974 and 1980, only about 2% of the persons listed on jury panels during those years appeared from that age group.[1] From this information Moore asserts that the jury selection process was constitutionally defective in that it excluded a distinctive class of persons, those aged 18 to 24, from jury selection.

At the outset we note that the constitutional purpose is to provide litigants with a fair and impartial jury. In support of that purpose we have long observed that the jury selection process should be such as to reflect a reasonable cross section of the community from which the jury is drawn. At the same time we have consistently refused to adopt a requirement that jury panels actually drawn constitute a microcosm of a county or court district. *See, e. g., Taylor v. Louisiana* (1975), 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690.

---

1. Population figures were based upon the 1970 census and projections testified to by an expert witness. Jury figures were determined from panels actually drawn although the panels for certain courts during certain periods were unavailable. Also, the age of some prospective jurors remained undetermined.

■ In furtherance of the underlying goal our Supreme Court in *State ex rel. Brune v. Vanderburgh Cir. Ct.* (1971), 255 Ind. 505, 265 N.E.2d 524 noted the impact upon jury selection occasioned by the legislature's repeal of the general personal property tax and approved the use of voter registration lists as ordered by the circuit court. In keeping with the views expressed in that opinion we expressly disapprove of the continued practice in Porter County of selecting veniremen solely from real property tax rolls.

■ That is not to say, however, that appellant Moore's jury was illegally constituted so as to require that he be given a new trial. To support such a contention the great majority of decisions have looked to the equal protection clause and have required a showing of a systematic and intentional exclusion of a particular class of persons. *See, e. g., Burr v. State* (1980), Ind., 403 N.E.2d 343.

Under the rationale of those decisions Moore's argument must concededly fail since there has been no showing of any purposeful exclusion. *Daniels v. State* (1980), Ind., 408 N.E.2d 1244.

He argues, however, that such a showing is unnecessary to his rights under the sixth amendment to have a jury reflecting a representative cross section of the community. In support he cites the decisions in *Duren v. Missouri* (1979), 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 and *Taylor v. Louisiana* (1975), 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690.

■ In those cases the Court recognized a violation of sixth amendment rights in state jury selection systems that worked to the exclusion of females from jury duty.

As the *Duren* majority stated:

"In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." 439 U.S. at 364, 99 S.Ct. at 668.

■ Of great significance is the Court's conclusion that systematic exclusion is prima facie established simply by proof that it is inherent in the particular jury-selection process utilized. 439 U.S. at 367, 99 S.Ct. at 670.

■ Under *Duren* once the defendant has made a prima facie showing that he has been denied his right to have a jury drawn from a fair cross section of the community, the state may still justify the selection process by showing that attainment of a fair cross section is incompatible with a significant state interest. The burden, however, is upon the state to demonstrate this. 439 U.S. at 369, 99 S.Ct. at 671.

In view of the broad majority language as highlighted by Mr. Justice Rehnquist's dissents, it would be simplistic to deem these decisions applicable only to exclusions based on sex or the traditionally suspect categories. Nevertheless, in view of the Court's continued and practical rejection of a requirement that juries mirror the community from which they are drawn (*Taylor, supra,* 419 U.S. at 539, 95 S.Ct. at 702), the parameters of the right remain indistinct.

■ The problem depends upon what may be said to constitute a "distinctive" group. In reviewing the cases from other jurisdictions we note the following from the California Supreme Court's decision in *Adams v. Superior Ct. of San Diego Co.* (1974), 12 Cal.3d 55, 115 Cal.Rptr. 247, 524 P.2d 375, 379:

"... [B]efore exclusion may be held improper, there must be a common thread running through the excluded group—a basic similarity of attitudes, ideas or experience among its members so that the exclusion prevents juries from reflecting a cross-section of the community."

We find this helpful as a definition and adopt it as characterizing the burden imposed upon a defendant seeking to establish

the prima facie showing required by *Duren* and *Taylor*.

■ In the instant appeal the burden has clearly not been met since there has been no showing whatever that the alleged group of 18 to 24 year olds possesses the common thread necessary so that their relative exclusion prevented the jury from the opportunity to represent a reasonable cross section of the community.

■ Moore next challenges the selection process by asserting that it did not comply with the statutory requirement that selections be proportioned to the population of each commissioner's district. IC 33–4–5–2. The basis for the contention is that the jury commissioners used voter registration figures by district rather than census figures to establish the proportions. We find this was a substantial compliance with the requirements of the statute. *Harrison v. State* (1952), 231 Ind. 147, 106 N.E.2d 912, 32 A.L.R.2d 875.

Moore also charges that while the panels drawn from property taxpayers were utilized for indigent defendants, those who could privately employ counsel could secure a special venire complied from the tax rolls and voter registration lists. The record does not bear out this contention. Indeed the docket entries in the two cases cited by Moore show that the request for a special venire was denied in one case and apparently never ruled on in the other.

He also contends that the selection process did not comply with the random selection technique established by IC 33–4–5.5–9. That statute, however, is by its terms applicable only to counties with a population between 500,000 and 600,000 according to the last decennial census. It did not apply to Porter County.

■ Moore next contends that his arrest was without probable cause and that it was therefore error for the court to admit certain statements made by Moore. We disagree.

Moore and his companion escaped police at the scene of the burglary and fled into a swampy area. Moore was, however, recognized by Officer Shaginaw, although the officer did not know his name. The officer did radio Moore's description.

The police continued to search the area until about 9:00 a. m. They, also, alerted patrol cars on the highways in the area. About 10:00 a. m. State Trooper Boruff, who was driving an unmarked car eastbound on Interstate 94 at its intersection with State Road 49, noticed a man lying in the ditch next to the highway. (These highways generally bounded the swampy area into which the burglars had fled.) He proceeded down the road, turned around, and then returned and pulled off the highway where the man was. The man (Moore) came up to the car. He was not wearing his shirt; his pants were wet from the knees down; he had no shoes; and he was covered with burrs and briars. Boruff testified the man appeared nervous and upset. Boruff could see the man's heart beating strongly. Despite this, the man told Boruff that he was hitchhiking home and his last ride had let him out at that location. Boruff checked over his radio and determined that Moore's clothing and physical description matched those of one of the burglars. He then asked Moore to accompany him to the police station. At the station Officer Shaginaw identified Moore. We find that when Trooper Boruff took Moore into custody he had probable cause. It follows that Moore's subsequent identification of the shoes he had lost was properly admitted. As to the additional contention that Moore's statement resulted from improper interrogation after he advised the police of his desire to remain silent, we must again disagree. The evidence favorable to the state establishes that Moore, not the police, initiated the conversation.

■ During final argument the prosecutor responded to what he deemed an attack upon the credibility of the police officers. He argued that if they really desired to lie about Moore they could have testified that he actually confessed to the crime. We are unable to accept Moore's assertion on appeal that this was intended

as commentary upon his election not to testify. Similarly, we find no error in the prosecutor's rebuttal argument pointing out that defense counsel could have examined witnesses concerning fingerprints or could have requested that Moore try on the shoes that had been found, if he had desired to.

There was no error in refusing Moore's tendered instruction on reasonable doubt because that subject was adequately covered by instructions given by the court. Furthermore, we find no error in the instructions given on an accused's liability for the acts of an accomplice or that the testimony of one witness may be sufficient where the jury finds the witness is telling the truth and all the elements of the offense are proven beyond a reasonable doubt. The instructions correctly stated the law and the issues they addressed were implicit in the facts and circumstances of the trial.

Moore contends the court should have given his instruction concerning the lesser included offense of criminal mischief. IC 35–43–1–2. We again must disagree. While under the circumstances of a particular case criminal mischief may constitute a lesser included offense to the acts constituting a burglary, it does not necessarily do so. The elements of burglary are breaking and entering with intent to commit a felony. The essence of criminal mischief is the reckless, or perhaps knowing or intentional (*see Humes v. State* (1981), Ind., 426 N.E.2d 379) damaging of another's property. Burglary may or may not involve such damage. *See Roddy v. State* (1979), Ind.App., 394 N.E.2d 1098. Moore's argument wholly fails to address the question and therefore any error has been waived. Moreover, we think the instruction as tendered was confusing and misleading in the manner in which it was drafted. It could have confused the jury into believing that if they found the elements of criminal mischief they should convict of that offense even if they did not have a reasonable doubt of the defendant's guilt under the burglary charge.

Finally, Moore urges the court erred by imposing an additional three years to the basic sentence because of aggravating circumstances. The basis for his contention is that the prosecutor did not introduce certified copies of his conviction record at the sentencing hearing. He relies upon a footnote from *Davis v. State* (1980), Ind. App., 398 N.E.2d 704. The reliance is misplaced. In *Davis* the court noted that in the absence of stipulation it was incumbent upon the prosecutor to present some proof of a prior conviction before a defendant could be precluded from consideration for probation.

Here Moore's prior convictions were set forth in his presentence investigation report. His counsel indicated he wished to make no additions or corrections to the matter in the report. One of these convictions had been had before the trial judge in the present case. We feel the record adequately supports the finding of a prior felony conviction.

Affirmed.

HOFFMAN, P. J., and STATON, J., concur.