Kenneth **ROGERS**, Appellant
(Defendant Below),

v.

**STATE of Indiana, Appellee**
(Plaintiff Below).

No. 1–681A193.

Court of Appeals of Indiana,
First District.

Nov. 25, 1981.

Lawrence J. Brodeur, Monroe County Deputy Public Defender, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Aimee L. Kolze, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Kenneth Rogers (Rogers) was tried by a Monroe County jury and convicted of rape. On appeal, Rogers contends that the jury selection process was improper, that the trial court erred in allowing an in-court identification of Rogers, and that the trial court should not have allowed an extrajudicial statement made by Rogers into evidence.

We affirm.

The facts in this case disclose that Rogers met the victim through James Ricks (Ricks), her neighbor, on April 15, 1980. Rogers attempted to buy drugs from the victim. On April 16, 1980, Rogers returned to the victim's house trailer at around 5:30

P.M. looking for Ricks. Rogers left and later returned at approximately 8:30 P.M., again, looking for Ricks. Rogers asked if he could wait for Ricks inside the victim's trailer. She and Rogers were inside the trailer for about one hour, when Rogers got up to use the telephone. Rogers then grabbed the victim, stuffed a blanket in her mouth, and took off her clothes. Rogers subsequently forced the victim to the floor and forcibly engaged in sexual intercourse with her. Rogers then attempted to pull her into the bedroom and a struggle ensued. The victim screamed for help. Shortly thereafter, two neighbors came to the victim's trailer. Rogers then fled the trailer, pushing his way past the two neighbors.

Rogers argues that the jury selection process was contrary to the procedure set forth in *Ind.Code* § 33–4–5–2. This section, in relevant part, provides:

> Said commissioners shall immediately from the names of legal voters and citizens of the United States on the latest tax duplicate and the tax schedules of the county examine for the purpose of determining the sex, age and identity of prospective jurors, and proceed to select and deposit, in a box furnished by the clerk for that purpose, the names, written on separate slips of paper of uniform shape, size and color of twice as many persons as will be required by law for grand and petit jurors in the courts of the county, for all the terms of such courts, to commence with the calendar year next ensuing. Each selection shall be made as nearly as possible in proportion to the population of each county commissioner's district. In making such selections, they shall in all things observe their oath, and they shall not select the names of any person who is not a voter of the county, or who is not either a freeholder or householder, or who is to them known to be interested in or has cause pending which may be tried by a jury to be drawn from the names so selected. They shall deliver the box, locked, to the clerk of the circuit court, after having deposited therein the names of herein directed. The key shall be retained by one (1) of the commission-

ers, not an adherent of the same political party as is the clerk.

◼ The jury venire did not comply with the exact procedure as provided in IC 33–4–5–2. However, the method resulted in a fair and impartial jury selection. The jury venire was drawn from the voters' registration list, which was sorted according to precincts and arranged in alphabetical order into a computer. The jury commissioners then drew a number between one and ten from a hat. This number was the key number for the computer list. The computer made the juror list, starting with the key number and choosing every tenth person thereafter. The list was divided into four quarters for the year. The list was then inspected to determine whether anyone was deceased or had moved. Prior to ruling on Rogers's motion to strike the jury venire, the trial court sought to discover whether the computer selected every tenth name throughout the entire master list, whether the computer was programed to select names randomly and whether twice as many persons were selected for the quarterly lists than were required to serve as jurors. There was no evidence of record to establish that any of the above questions were not answered affirmatively, such that there is no allegation that the venire was not randomly selected.

◼ The essence of Rogers's argument is that the State has failed to comply with the statutory procedure by utilizing a computer to select the jury venire rather than the jury box method as outlined in IC 33–4–5–2. Where there is substantial compliance with the jury procedure, the defendant must demonstrate a showing of prejudice, however, where there is lack of substantial compliance, the defendant need not show actual prejudice. *Cross v. State*, (1979) Ind., 397 N.E.2d 265. Rogers argues the State cannot demonstrate substantial compliance and therefore, he is entitled to a new trial.

◼ It has been consistently held that the jury selection systems are required to draw prospective jurors from a fair cross-

section of the community. *Daniels v. State*, (1980) Ind., 408 N.E.2d 1244. The statutory jury selection methods are designed with the purpose of removing the suspicion of favoritism or advantage in the selection of a jury. *Owen v. State*, (1979) Ind., 396 N.E.2d 376. In *State ex rel. Burns v. Sharp*, (1979) Ind., 393 N.E.2d 127, our supreme court stated:

> A completely random selection of jurors is not required so long as the system used is impartial and not arbitrary. However, complete impartiality in the selection process should be sought, and the more random the process, the less will be the appearance of arbitrariness. The major requirement should be that the system of selection is not arbitrary. Obviously, jury commissioners must be vested with a certain amount of discretion. (Citations omitted).

393 N.E.2d 130.

In the present situation, we find the use of the computer rather than the jury box was not improper by the jury commissioners. There have been no allegations of racial, sexual, or religious discrimination. The process did not result in systematic exclusion of any group and the voter registration list was not based upon political affiliation. The computerized method resulted in an impartial selection of jurors from a cross-section of the community, who were chosen in a random method. In utilizing this method, the jury commissioners satisfied the purposes and goals of the jury selection statutes. Moreover, the method employed in the present case is very similar to the method outlined for counties with larger populations in *Ind.Code* 33–4–5.5–1 *et seq.* It would be somewhat provincial for this court to assume that the lesser populated counties of our state do not possess the resources or ability to employ technological advances to facilitate jury selection. It would be appropriate for the legislature to review the jury selection statutes in light of the progress in data processing equipment which has occurred since IC 33–4–5–2 was passed. In summary, we find the jury commissioners acted lawfully in using the computer and this method substantially complied with IC 33–4–5–2. There has been no showing of prejudice by Rogers in the jury selection, and therefore, he has failed to demonstrate he was adversely affected by the computerized jury list.

■ The next issue Rogers raises is whether the trial court erred in allowing a witness to make an in-court identification of Rogers. The witness, April Smith, identified Rogers as the man she saw leaving the victim's trailer. Smith was a neighbor of the victim who responded to her screams. Rogers argues the in-court identification was inherently suggestive because Smith had been unable to identify Rogers in a pre-trial photographic display. Smith had been unable to determine which photograph was Rogers, however, she picked out two photographs, one of which was Rogers. Smith explained the reason why she could not determine which photograph was a picture of Rogers was because the photograph made Rogers look heavier, it was unclear, and the lighting was poor. Smith testified that she recognized Rogers from the trailer. The standard of admissibility for an in-court identification is whether from the totality of the circumstances the identification procedure was impermissively suggestive as to give rise to a substantial likelihood of misidentification. *Hazzard v. State*, (1980) Ind., 413 N.E.2d 895. Smith's testimony indicated that she had an independent basis for her identification and therefore, eliminated any likelihood of misidentification. Thus, the inconsistency in the evidence of the photographic display did not automatically result in suppression, but instead affected the weight to be given the identification testimony. *Johnson v. State*, (1977) 265 Ind. 689, 359 N.E.2d 525.

■ The final issue Rogers raises is whether the trial court erred in allowing an extrajudicial statement by Rogers into evidence. Rogers argues that the statement was made without a knowing and intelligent waiver of his rights as expressed in *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Detective Ser-

geant Gilbert Niswander drove to Chicago to pick up Rogers and return him to Bloomington. Prior to departing for Bloomington, Niswander advised Rogers of his *Miranda* rights and asked Rogers whether he had any questions concerning these rights. Rogers did not execute a written waiver of his *Miranda* rights. During the course of the journey, Niswander asked Rogers the whereabouts of his car. Rogers responded that he had been in Montreal and was enroute to San Francisco. Niswander did not ask Rogers any questions concerning the crime and in fact, refused to discuss questions that Rogers asked about the crime. Although the officer probably should not have made the inquiry, it is quite common that during a long journey automobile passengers will converse. The question did not constitute an interrogation requiring *Miranda* warnings. *See, Johnson v. State,* (1978) 269 Ind. 370, 380 N.E.2d 1236. Furthermore, Rogers was fully advised of his rights and acknowledged he understood them. We remain unpersuaded that the State failed to prove Rogers waived his rights.

The judgment is affirmed.

NEAL, P. J., and RATLIFF, J., concur.