Bobby Luis PECK Appellant,

v.

STATE of Indiana, Appellee.

No. 71S00–8904–CR–349.

Supreme Court of Indiana.

Dec. 5, 1990.

Paul James Newman, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Judge.

Defendant–Appellant Bobby Luis Peck ("appellant") appeals his conviction of Murder, for which he received a sentence of sixty (60) years.

Peck presents four issues for our review, as follows:

1. whether the trial court erred in granting the State's Motion to Consolidate appellant's cause with that of his brother, Donald Peck ("Donald"), and in denying appellant's renewed objection to consolidate;

2. whether the trial court erred in allowing the State to question, over appellant's objection, witness Debbie Neely regarding her being afraid of Donald;

3. whether the trial court erred in allowing the prosecutor to make statements during the questioning of witness Curtis Crenshaw regarding certain distances involved in his testimony; and

4. whether the trial court erred and abused its discretion in requiring the parties to make closing statements and sending the jury to deliberate, over appellant's objection, after 9:00 p.m. on the third day of trial.

The facts most favorable to the verdict show that at approximately 4:00 a.m. on June 8, 1986, in the 1200 block of West Washington Street in South Bend, the victim, Wayne Mack, was talking with appellant and his brother Donald. Appellant and Donald were sitting in their brother John Wigfall's parked car at the time, and the victim was standing outside of the car. Appellant, who was sitting in the front passenger's seat, leaned across Donald, who was in the driver's seat, and shot the victim. There were a number of witnesses to this shooting. Curtis Crenshaw testified that he saw appellant lean across Donald and shoot. He heard three shots fired and left the scene. Cathy Weston, who was in the back seat of appellant's car when the shooting took place, saw and heard appellant shoot the victim and remained in the car when Donald drove away after the shooting. South Bend Police Officers ar-rived at the scene shortly thereafter and the victim was brought to Memorial Hospital in South Bend. He subsequently died of the multiple gunshot wounds he suffered.

Appellant's brother, John Wigfall, testified at trial. Appellant and Donald had been driving Wigfall's car at the time of the shooting. Later on the morning of June 8, 1986, Wigfall went over to appellant's house to retrieve his car, at which time appellant told him the car had a bullet hole in it and that he thought he had killed a man. Wigfall did not know at the time who appellant was talking about. A few days later, appellant explained to Wigfall that he was going down the street when someone stopped the car and approached him in an effort to either buy or sell drugs. Appellant told the man to get away from the car. The man walked away from the car, put his hand in his shirt and began to turn around when appellant "gun smoked" him. Donald told Wigfall that he begged and pleaded with appellant to drive on and not to mess with this guy. Wigfall, afraid that the police would suspect him of the crime, tore the vinyl off the roof of his car and patched the bullet hole soon thereafter.

I.

Appellant contends the trial court erred in consolidating his case with Donald's. The State charged appellant with murder and Donald with assisting a criminal. These charges were brought in separate informations. Appellant correctly points out IC 35–34–1–9(b) provides the State may charge two or more defendants in one information or indictment. In this case, the State chose to file separate informations. Appellant urges there is no provision in the statute to allow the State to seek consolidation after it has exercised its discretion and filed separate, rather than joint, informations. Therefore, appellant concludes, the trial court did not have the authority to grant, over his objection, the State's Motion to Consolidate. Appellant argues alternatively that the trial court abused its discretion in consolidating these cases.

■ Appellant is mistaken. The trial court did have the authority to consolidate these cases. Absent any statutory provision for consolidated trials of separately-charged defendants, it is within the trial court's discretion to determine whether defendants' trials should be joined. To show an abuse of discretion, an appellant must show that in light of what occurred at trial, the denial of a separate trial subjected him to actual prejudice. *Hicks v. State* (1989), Ind., 536 N.E.2d 496, 499; *Hatchett v. State* (1987), Ind., 503 N.E.2d 398, 401.

Appellant claims three sources of error due to the consolidation of his case with that of his brother Donald. First, appellant claims he was prejudiced because he had to share his peremptory challenges and therefore lost his right to have a fair and impartial jury hear and consider only the evidence regarding his case. Second, he was forced to allow the jury to hear confusing instructions designed for both defendants. Third, consolidating these cases led to the admission of certain incriminating evidence which would not have been admissible if appellant was tried alone.

■ Appellant argues that the mere sharing of peremptory challenges constituted reversible error here. This Court has previously resolved this issue contrary to appellant's position. The sharing of peremptory challenges does not constitute reversible error absent a showing of actual prejudice. *Hicks*, 536 N.E.2d at 499; *Hatchett*, 503 N.E.2d at 402. During *voir dire*, appellant was bound by his co-defendant's use of two peremptory challenges that he did not agree with. Thereafter, the co-defendants exhausted their ten combined peremptory challenges and appellant attempted, but was not allowed, to strike an eleventh prospective juror peremptorily. The exhaustion of peremptory challenges in the context of a joint trial was not presented in either *Hicks, supra,* or *Hatchett, supra.* This Court, in *Campbell v. State* (1989), Ind., 547 N.E.2d 843, reversed a conviction where the trial court erroneously failed to strike a juror for cause, thereby forcing Campbell "to relinquish a challenge *to which he otherwise*

*would have been entitled."* *Id.* at 844 (emphasis added). Here, in the context of a joint trial, appellant was not entitled to more than the ten peremptory challenges he shared with his brother Donald. IC 35-37-1-3(b) and (d) provide that co-defendants share their peremptory challenges. Donald peremptorily struck two jurors that appellant did not agree should have been struck peremptorily. This, however, did not entitle appellant to two more peremptory challenges. Absent a showing of error in the consolidation, appellant presents no error on this issue.

Next, appellant contends that his tendered jury instruction number four (4), as modified by the trial court, was confusing to the jury:

~~The accused~~ **Each defendant** has testified as a witness in the trial of this case. Under the law, ~~he~~ **each defendant** is a competent witness in his own behalf and has a right to testify. His evidence should be weighed by the same rules which apply to the evaluation of the evidence of any other witnesses who have testified. You have no right to disregard or disbelieve the testimony of ~~the accused~~ **either defendant** or to look upon his testimony with suspicion merely because he is ~~the~~ **an** accused in this case. You, the members of the jury, should consider fairly the testimony of ~~the accused~~ **each defendant** together with all of the other evidence in this case.

*Record* at 84. We fail to see anything confusing about this modified instruction.

Finally, appellant points to two sources of incriminating evidence which were admitted at the joint trial. The first came from Debra Neely, the mother of Donald's three children. Neely testified as an alibi witness on behalf of appellant and Donald, stating that on the night of June 7, 1986, she, appellant, Donald, Tracy Scott and Marcella Henderson were at her house playing cards. She testified that she was with Donald all day and appellant came to the house between 10:00 and 10:30 p.m. Neely further testified that appellant and Donald left the house around 11:30 or 11:45 p.m. to pick up John Wigfall and returned

an hour later. This testimony was corroborative of that of other witnesses who testified on behalf of appellant and Donald. On cross-examination, Neely admitted she had told police on a previous occasion that she was afraid of Donald. This testimony was admitted over appellant's objection. On re-direct examination, Neely was asked if appellant had ever done anything to put her in fear as to alter the truthfulness of her testimony or to threaten her to testify in court. She replied in the negative. Appellant contends if he were tried alone, the State would not be allowed to impeach Neely in that manner. We do not agree. If appellant was separately tried, he could have certainly called Neely to testify as an alibi witness. It then would have been proper to show that, on a previous occasion, the mother of Donald's three children told the police that she was afraid of him. This would have been relevant to impeach Neely even in a separate trial because appellant and Donald are brothers and witnesses placed them together at the scene.

The second source of incriminating evidence appellant contends would be inadmissible if he were tried separately came from John Wigfall. Wigfall testified as to statements made to him by Donald which directly implicated appellant in the shooting of Wayne Mack. Specifically, Donald told Wigfall that he begged and pleaded with appellant to leave the victim alone and not to mess with him. Far more damning to appellant, however, is his own admission of the crime to Wigfall: "I think I killed the m_____f_____." *Record* at 519. This admission would have been admitted against appellant even if he were tried separately. Donald's statement that he begged appellant to leave the victim alone pales by comparison.

Appellant presents no actual prejudice by the trial court's consolidation of these cases for trial.

## II.

■ Appellant claims the trial court erred when it allowed the State to question, over appellant's objection, witness Debra Neely regarding Neely's statement to the police on a prior occasion that she was afraid of Donald. Appellant argues this statement was prior to the murder in question and had nothing to do with the testimony of this witness at this trial. We disagree. Evidence of this witness' past expression of being afraid of Donald was relevant insofar as it tended to prove a fear of Donald at the time of trial. Neely's fear of Donald was a relevant fact for the jury to consider in assessing her credibility as an alibi witness. Appellant concedes the trial court is vested with broad discretion in ruling on the relevance of evidence and that the burden is on him to not only show an abuse of discretion, but also that he was harmed as a result thereof. *Schumaker v. State* (1988), Ind., 523 N.E.2d 1381, 1384–85. The trial court did not abuse its discretion here.

## III.

■ Next, appellant maintains that the trial court erred in allowing the prosecutor to make statements during the questioning of witness Curtis Crenshaw regarding certain distances involved in his testimony. Crenshaw testified as an occurrence witness to the shooting of Wayne Mack. In an attempt to demonstrate how far Crenshaw was from the shooting, the prosecutor moved a certain distance away from the witness, at the witness' direction, until he stood approximately as far from the witness stand as Crenshaw said he was from the victim when the victim was shot. The prosecutor then stated how far he was from the witness stand and asked the record to reflect he was that distance from the witness. Appellant objected and maintains the prosecutor had no right to opine as to this distance for purposes of the record. The trial court, appellant continues, abused its discretion in allowing the prosecutor to give what amounted to his own opinion evidence regarding this distance to the jury. Such an abuse of discretion, appellant contends, interfered with his right to a fair trial.

■ We find nothing improper about the courtroom demonstration itself. Courtroom demonstrations are admissible sub-

ject to the the trial court's discretion and, on appeal, the trial court's discretion with respect to the admissibility of demonstrations is subject to review only for an abuse of discretion. *Andrews v. State* (1989), Ind., 532 N.E.2d 1159, 1165; *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153, 1158, *cert. denied* (1985), 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851. The jury could observe the distance shown by the demonstration for itself. It was not an abuse of discretion to permit the estimation for demonstrative purposes.

Our standard of review when presented with such an issue is the same as when we review a challenge to the sufficiency of the evidence: we neither reweigh the evidence nor judge the credibility of witnesses. We examine only the circumstantial and direct evidence most favorable to the State together with all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion the defendant is guilty beyond a reasonable doubt, the verdict will not be set aside on appeal. *Thomas v. State* (1988), Ind., 519 N.E.2d 143, 144–45. The jury saw the prosecutor mark off that distance at the direction of Crenshaw. Any inconsistency between the prosecutor's verbal estimate of that distance and what the jury visibly observed was theirs to resolve.

Appellant presents no error on this issue.

## IV.

■ The final issue appellant raises is whether the trial court erred and abused its discretion in requiring the parties to make closing statements and sending the jury to deliberate, over appellant's objection, after 9:00 p.m. on the third day of trial. Appellant maintains the jury should not have been forced to deliberate until the next day. The jury had been in court since 9:30 a.m. and the parties completed the presentation of their evidence at 4:11 p.m. that day. When the trial court made it clear that it intended to try and complete the trial that day, appellant requested a recess until the following day in order to prepare for final argument and allow the jury to be fresh when they received the case for delib-

eration. The trial court denied appellant's request for recess, in part, because of its heavy calendar the next day. The trial court also expressed concern about the memory of the individual jurors if deliberations were delayed. In addition, the trial court noted, most of the witnesses on the last day of trial were defense witnesses and that appellant's counsel should have been able to anticipate their testimony and fully prepare for closing argument. Moreover, the trial court noted the jurors had several breaks that day and did not appear exhausted. The case was finally submitted to the jury at 9:36 p.m. After approximately four hours of deliberation, the jury returned a verdict convicting appellant of murder and acquitting Donald of assisting a criminal. This Court has recognized that the trial judge is in the best position to determine whether or not to adjourn the trial and his determination of that issue will be reversed only for a clear abuse of discretion coupled with prejudice to the defendant. *See, e.g., King v. State* (1988), Ind., 531 N.E.2d 1154, 1161 (no clear abuse of discretion shown where habitual offender portion of trial allowed to take place from 9:10 p.m. until 11:10 p.m.) We find the trial court did not abuse its discretion here.

■ Appellant complains the jury reached a compromise verdict in order to go home that night, arguing there was no justification based on the evidence at trial to acquit Donald of assisting a criminal and to convict appellant of murder. This argument is not persuasive. There was more than sufficient evidence to support appellant's murder conviction. Donald's acquittal of assisting a criminal has no bearing on appellant's guilt or innocence. Appellant correctly notes that every State's witness who testified they saw appellant shoot the victim also testified they saw Donald drive appellant to and from the scene of the crime. Moreover, every defense witness that testified on behalf of Donald also testified that appellant was with Donald away from the scene of the crime at the time the victim was shot. Nevertheless, there also was testimony from John Wig-

fall that Donald told him he actually tried to prevent the shooting by pleading with appellant to leave the victim alone. In order for the State to have convicted Donald of assisting a criminal, it had the burden of proving beyond a reasonable doubt that he harbored, concealed, or otherwise assisted appellant with the intent to hinder his apprehension or punishment. IC 35–44–3–2. True enough, driving away from a shooting with the perpetrator in one's car would be sufficient in most cases to convict one of assisting a criminal. However, Article I, Section 19, of the Indiana Constitution provides: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Therefore, even if the State proved its case against Donald beyond a reasonable doubt, the jury, as finders of both the facts and the law in Indiana, was not legally bound to convict him. The mercy extended to Donald by the jury could reasonably be explained by John Wigfall's testimony, as noted above. Given all of the evidence presented in this case, we cannot say that the jury's conviction of appellant of murder, coupled with its acquittal of Donald on the charge of assisting a criminal, constituted a compromise verdict. This is true, even given the circumstances of the jury's late-hour deliberations.

Appellant has not persuaded us that the jury failed to carefully consider all of the evidence presented in convicting him of the murder of Wayne Mack.

The trial court is affirmed.

SHEPARD, C.J., DeBRULER, GIVAN and DICKSON, JJ., concur.