**Michael Allen LAMBERT, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 18S00–9107–DP–544.

Supreme Court of Indiana.

Dec. 6, 1994.

Mark Maynard, Anderson, Ronald McShurley, Muncie, for appellant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

Upon conviction of the murder of a police officer, appellant received the death penalty. Oral argument was held in this cause on June 3, 1993. The State conceded the trial court applied the wrong standard in determining intoxication is not a mitigator; therefore, this Court ordered the case remanded to the trial court to reconsider evidence of intoxication and its effect on the penalty in view of Ind.Code § 35–50–2–9(c)(6). The trial court has returned its findings and judgment as per our Order and the parties have filed their respective briefs pertaining thereto.

The facts are: During the afternoon of December 27, 1990, appellant consumed several alcoholic drinks. At approximately 8:00 p.m., he went to the 300 Club Bar on the south side of Muncie, Indiana where he consumed additional alcoholic beverages. His conduct there was described as "radical" and "dancing around wild-eyed." A little after 1:00 a.m., on December 28, 1990, Muncie Police Officers were dispatched to a property-damage accident. When they arrived, they observed a utility truck with the name "Jim Allen's Service Maintenance" painted on the side. Shirts inside the truck bore the name "Mike." The driver could not be found and the truck was towed.

A short time later, Officer Kirk Mace observed appellant trying to crawl under a car. When Officer Mace investigated, appellant told him he was going to sleep under the car. He was lightly dressed, it was snowing and the temperature was in the teens. The officer concluded that appellant was intoxicated and placed him under arrest for public intoxication. Appellant was subjected to a "quick pat-down search," was handcuffed, and was placed in the back of the police car. Then, Officer Gregg Winters, with only he and appellant in the police car, started driving to the jail which was approximately fifteen minutes away.

A few minutes later, Deputy Sheriff Mike Scroggins and Deputy Greg Ellison were driving their patrol cars east on Riggins Road when they observed a westbound car approaching. It suddenly slid off the road, coming to rest against a fence in a ditch. As the car went into the ditch, the officers were able to observe that it was a police car. They observed Officer Winters immobile behind the steering wheel and appellant in the back seat of the car. It was discovered that Officer Winters had suffered gunshot wounds to the back of the head and neck, and although appellant was handcuffed, there was a .25 caliber pistol lying on the floor of Winter's police car. Ballistics tests later established the weapon was used to inflict the wounds on Officer Winters. It also was learned later that appellant had stolen the pistol from his employer.

Six empty cartridge casings were located in the car and five slugs were recovered, one from the body of Winters during the autopsy, two from the front seat of the car, one from Winters' clothing at the hospital, and one which was lodged between the dash panel and the left pillar of the car. An autopsy revealed that Officer Winters in fact had been struck by five separate bullets.

Despite the fact appellant was handcuffed at the time, he apparently was able to recover the pistol from his clothing and fire the shots into the back of the head and neck of Officer Winters. Police conducted a demonstration to determine if such an act was possible. The demonstration was videotaped and clearly established the fact that a person of appellant's height and weight in fact could accomplish such a feat although it did require a certain amount of physical dexterity.

Appellant claims the jury panel was improperly drawn and that the system used by Delaware County to obtain prospective jurors uses the voter registration lists only and thus is in violation of Ind.Code § 33–4–5–2(a), which requires a list of prospective jurors be chosen from not only the list of legal voters in the county but also the latest tax schedules of the county.

Appellant concedes that this procedure was approved in *Rogers v. State* (1981), Ind. App., 428 N.E.2d 70. Appellant argues that in 1989 the legislature amended Ind.Code § 33–4–5–7 to eliminate the requirement that a person be a resident voter in order to be qualified for jury duty and in retaining the language in Ind.Code § 33–4–5–2(a) that the

jury panel be drawn both from the voter registration list and the tax schedules, further provided that potential juror lists could be expanded beyond those persons to include various other groups.

Appellant takes the position that when the legislature undertakes to amend a statute it is presumed to be aware of prior language and the Court interpretation of the statute. Thus, the prior holding in *Rogers* that a drawing from either registered voters or property owners would be proper was altered by the statutory amendment. Henceforth, it is required that both voter registration and tax schedules lists be used in drawing potential jurors.

■ In order to show reversible error in the manner in which prospective jurors are chosen, an appellant must show a common thread running through the excluded group, showing that the exclusion was such as to prevent juries from being made up of a certain segment of the population of the community. *See Moore v. State* (1981), Ind.App., 427 N.E.2d 1135. In the case at bar, appellant in effect is arguing that property owners who are not registered voters would have been excluded. However, there is no showing that property owners as a group were excluded from the jury. As the State points out, many property owners in fact are registered voters and there is no showing here that a jury was made up entirely of registered voters only and excluded property owners. Under the circumstances of this case, the observations made by the Court of Appeals in *Rogers* are still valid and applicable to the case at bar. We see no reversible error in the manner in which the jury was chosen.

Appellant claims the trial court erred in denying his motion for change of venue or venire. The record here amply demonstrates that this case received a high degree of publicity not only in Delaware County but throughout the entire state. During *voir dire* examination, the jurors were questioned extensively concerning the knowledge they had gained of the case through news media or any other source. Each person who eventually was chosen and served on the jury was able to state that although they had read

accounts of the incidents leading to appellant's trial, they would be able to make their determination based solely on the evidence heard in the case and would follow the instructions of a trial court. This was in keeping with our holding in *Davidson v. State* (1991), Ind., 580 N.E.2d 238.

■ We would further point out that appellant did not exhaust his peremptory challenges which would be a prerequisite to demonstrating that he was subjected to a biased panel. *Reinbold v. State* (1990), Ind., 555 N.E.2d 463. There is no evidence in this record to support appellant's claim that the trial court erred in denying his motion for change of venue or change of venire.

Appellant contends that allowing the State to proceed to seek a "death-qualified" jury subjected him to a trial by a "guilt-prone" jury. Appellant concedes that both the Supreme Court of the United States and the Supreme Court of Indiana have held that death qualification is not unconstitutional. *See Lockhart v. McCree* (1986), 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137; *Fleenor v. State* (1987), Ind., 514 N.E.2d 80, *cert. denied*, 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158. However, he urges us to reconsider this line of cases in light of *Georgia v. McCollum* (1992), ——— U.S. ———, 112 S.Ct. 2348, 120 L.Ed.2d 33. We do not find that case on point here. *McCollum* holds that the prosecution is barred from exercising peremptory challenges in a racially discriminatory manner.

■ We find that both the United States Supreme Court and this Court still adhere to the proposition that it is proper to qualify a jury concerning their willingness to give the death penalty. Appellant argues that *McCollum* stands for the proposition that excluding any class of persons from a jury deprives those persons of their rights and undermines the fairness of the judicial system. However, when persons state they cannot perform their duties as required by law because of their personal convictions, they cannot qualify for jury service in that particular case. *See Utley v. State* (1992), Ind., 589 N.E.2d 232, *cert. denied*, ——— U.S. ———, 113 S.Ct. 991, 122 L.Ed.2d 142. We

continue to hold that it is valid for the State to qualify a jury to consider the death penalty.

Appellant claims the trial court erred in denying his motion to suppress his statement to police and admitting that statement in evidence at trial. Appellant contends he was so intoxicated at the time he was arrested and questioned that he was incapable of knowingly and freely waiving his right against self-incrimination; therefore, his statement to police was not admissible. There is no question that a person may be so intoxicated that he is incapable of giving a knowingly voluntary statement to police. *See Thomas v. State* (1983), Ind., 443 N.E.2d 1197. We have held that a defendant's statement will be deemed incompetent only when he is so intoxicated that it renders him unconscious of what he is doing or produces a state of mania. A lesser degree of intoxication affects only the weight and not the admissibility of his statement. *Houchin v. State* (1991), Ind., 581 N.E.2d 1228.

Officer Stanley testified that when he started taking appellant's statement at 4:05 a.m. on December 28, appellant appeared to be oriented as to time and place and did not slur his words. He said appellant stated to him that he understood what was going on and that he was able to recount events in a logical order and sequence. Appellant stated that he had "a buzz on" but he was not drunk and knew what he was saying. Captain Cox testified that he detected an odor of alcohol; however, he observed appellant walking and he did not wobble or stumble. Although there was an odor of alcohol on appellant, he did not demonstrate any of the other signs of intoxication. Samples of appellant's signature affixed to his statement to the police and his signature taken at other times were compared for their similarity.

A breathalyzer test given to appellant at 5:15 a.m. showed he tested a blood alcohol level of .18 percent. We have held that if a defendant appears to be able to talk clearly and understand what he is saying even though he tests high in blood alcohol content, his statement will be admissible. *See Gregory v. State* (1989), Ind., 540 N.E.2d 585. The evidence in this case supports the trial court's finding that although intoxicated, appellant had the ability to render an intelligent and voluntary statement to the police.

Appellant contends the trial court erred by allowing in evidence a videotape of a staged "reenactment" of the crime. Because of the obvious difficulty of a person who was handcuffed obtaining a weapon from his clothing and firing five shots into the back of an officer's head, the State chose a person of appellant's height and weight to demonstrate such a possibility. In several tries, the demonstrator was able to produce a gun from several locations in his clothing with the exception of his right coat sleeve. He not only was able to produce the weapon but able to demonstrate his ability to fire it in the direction of a person seated behind the wheel of the automobile. Demonstrations are admissible subject to a trial court's discretion. On review, we will reverse only for an abuse of that discretion. *Peck v. State* (1990), Ind., 563 N.E.2d 554.

Appellant cites *Peterson v. State* (1987), Ind., 514 N.E.2d 265 for the proposition that in making a determination to permit a demonstration, the court should consider: 1) the ability to make a faithful record of the drama for appeal purposes; 2) the degree of accuracy in the recreation of the actual prior condition; 3) the complexity and duration of the procedure; 4) other available means of proving the same facts; and 5) the risk which the conduct of such procedure may pose to the fairness of the trial. In this case, it is obvious the ability to restage the action was exceedingly simple.

The police officer and appellant were the only two people in the automobile—the police officer behind the wheel and appellant handcuffed in the back seat. There is obviously very little variation that could have occurred. There is obviously nothing complex about such a procedure. The murder weapon was found on the floor of the car and it was established that it had been stolen from appellant's employer. The demonstration clearly showed the ability for a handcuffed person to produce and fire the gun in such a manner as was necessary to inflict the

wounds on the officer. We see no violation of the trial court's discretion in permitting the videotape of the demonstration to be shown to the jury.

■ Appellant claims the trial court erred in refusing to read appellant's Final Instructions Nos. 9 and 10 on voluntary manslaughter as a lesser-included offense. Appellant contends he was too drunk to form the necessary intent to kill. This Court has held previously that voluntary manslaughter requires intent, whereas the defense of intoxication, if accepted, requires an acquittal because of lack of the ability to form intent. It does not justify a conviction on a lesser-included offense. *Rowe v. State* (1989), Ind., 539 N.E.2d 474; *McCarty v. State* (1986), Ind., 496 N.E.2d 379.

■ In the case at bar, appellant was arrested while trying to crawl under an automobile to sleep. When the officer discerned that he was intoxicated, he was arrested, handcuffed, and placed in the back seat of a squad car. There was nothing unusual about his arrest nor was there any confrontation with the police in regard thereto. There is no evidence that he was abused in any way or that he was discernibly angered in any way. There is nothing about the facts in this case that would justify a finding that appellant was subjected to an aggravating situation provoking sudden heat which would be an element to consider so far as a voluntary manslaughter instruction would be concerned. The trial court did not err in refusing to give a voluntary manslaughter instruction.

Appellant claims the trial court erred by modifying his proposed Final Instruction No. 1 regarding the effect of the jury recommendation concerning the death penalty during the penalty phase of the trial. The trial judge modified appellant's Tendered Instruction to read in part:

"A jury recommendation is to be given a special role in a judge's process of determining punishment, because it represents the collective conscience of the community."

He claims his instruction should have been given unmodified because nowhere else were the jurors told of the great weight and very serious consideration which would be given to their recommendation and sentencing.

■ In *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228, this Court noted that an instruction need not necessarily be read to the jury because it is a correct statement of the law.

"The mere fact that certain language or expressions are used in the opinions of this Court to reach its final conclusion does not make it proper language for instructions to a jury." *Id.* at 25, 408 N.E.2d at 1241.

The trial court correctly advised the jury of their advisory role. *Bellmore v. State* (1992), Ind., 602 N.E.2d 111, 125. The instruction tendered by appellant focused only on one possible recommendation and would have encouraged the jury to try to gauge the legal consequence of their recommendation rather than to consider what on the evidence their recommendation should be. The modification by the trial court was proper. There was no error.

■ Appellant claims the trial court erred in allowing the State to present victim-impact evidence during the penalty phase of the trial and failing to strike the victim-impact statements from the presentence investigation report. In *Bivins v. State* (1994), Ind., 642 N.E.2d 928, a majority of this Court, construing our state constitution, adopted a new rule of criminal procedural law constraining the available aggravating circumstances to those designated by the capital sentencing statute. The *Bivins* majority applied this new rule to hold that victim-impact evidence would be improper unless relevant to one of the statutory capital aggravators. This new rule applies in pending cases on direct appeal if the issue is properly preserved. In the present appeal, the defendant asserts error in the admission of victim-impact evidence only on grounds that it is contrary to Indiana statutes concerning the probation officer's presentence investigation. Ind.Code § 35-38-1-8.5(A). Because the defendant's appeal does not present the legal claim upon which *Bivins* was decided, we deem such issue to be waived. Appellant concedes that the United States Supreme Court has held in *Payne v.*

*Tennessee* (1991), 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 that the Eighth Amendment does not prohibit the introduction of such evidence. He further concedes that this Court has followed *Payne*. *Roche v. State* (1992), Ind., 596 N.E.2d 896; *Benirschke v. State* (1991), Ind., 577 N.E.2d 576, *cert. denied,* —— U.S. ——, 112 S.Ct. 3042, 120 L.Ed.2d 910. We find no reversible error here.

Appellant contends the trial court erred at sentencing by finding and considering aggravating circumstances not supported by the evidence and failing to find and consider mitigating circumstances supported by the evidence. He further claims the trial court applied the wrong standard to the evidence of intoxication and in finding that the aggravating factor of the killing of a police officer in the line of duty outweighed the mitigating factors. As previously stated in this opinion, this case was remanded to the trial court for consideration of the possible mitigator of intoxication.

In responding to that remand, the trial court has presented a lengthy and detailed evaluation of each possible aggravator and each possible mitigator which he considered in rendering the sentence. He carefully analyzes each aspect of the claim of appellant's intoxication and finds that he in fact was intoxicated at the time the crime was committed and that he was intoxicated to the extent that it impaired his ability to reason. However, he further found that:

> "[Appellant's] capacity to conform his conduct to the requirements of the law was not substantially impaired as a result of intoxication, mental disease, or defect. The Defendant was able to conform his conduct to those requirements.
>
> A closer question is whether or not [his] capacity to appreciate the criminality of his conduct was substantially impaired as a result of mental disease or defect or of intoxication."

The court went into detail concerning appellant's age—which was 20 years, his level of intoxication, his family history, his prior exposure to alcohol, and the impact the alcohol had on his judgement. He held that these factors should be considered as mitigators and should be considered together with the aggravators in coming to a conclusion as to the sanction to be imposed. The careful detail given by the trial court in response to our remand is to be commended. In the vernacular, we observe he did not "leave a stone unturned."

He carefully points out the evidence as to appellant's degree of intoxication, the absence of any aggravating circumstance, the total wantonness of appellant's conduct in deliberately firing five shots into the back of the head and neck of an officer who had in no way abused him. The trial court did observe that appellant had shown some signs of possible rehabilitation and he claimed that he already had started on such a program.

This case is very similar to the case of *Johnson v. State* (1992), Ind., 584 N.E.2d 1092, *cert. denied,* —— U.S. ——, 113 S.Ct. 155, 121 L.Ed.2d 105. The ages of Johnson and appellant were the same. They both were intoxicated at the time they committed murder. In Johnson's case, he fatally bludgeoned an 82–year–old woman to death after breaking into her home. In the case at bar, the officer was shot from the back with no opportunity to defend himself.

In both cases, lack of guidance in upbringing and intoxication were urged as mitigating circumstances. However, in *Johnson* as in the case at bar, those contentions were to no avail at the trial level. The court in *Johnson* relied on our holding in *Woods v. State* (1989), Ind., 547 N.E.2d 772, *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2911, 115 L.Ed.2d 1074, where the defendant attempted to rely on the fact of a turbulent childhood marked by mistreatment as a mitigator. As in both *Johnson* and *Woods,* we find appellant's claims that mitigators should override the aggravators and that the death penalty should not be invoked are to no avail.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON, J., concur.

DeBRULER, J., concurring in result and dissenting with separate opinion in which SULLIVAN, J., concurs.

DeBRULER, Justice, concurring in result and dissenting.

1. Over objection at trial the judge admitted a videotape in which appeared a male officer whose hands were handcuffed behind his back. This officer moved and tossed about and managed to position his hands and body in a manner which would have permitted him to remove a handgun from the back of his pants, place it on the driver's head rest and yell "bang, bang." This ruling was error. The standard governing the admissibility of such matter given in *Peterson v. State* (1987), Ind., 514 N.E.2d 265, was not met. First, there was no necessity for the employment of this method by the prosecution in proving its case. The jury was in a perfect position to judge whether appellant was able to draw, point, and fire the fatal shots while handcuffed. Such judging is everyday fare for triers of fact. Second, this visual portrayal is pure theater. It was written, produced, directed, and casted by the prosecuting agents of the government. It has emotional content and impact upon the viewer far beyond the abstract message it carried that appellant could have drawn, pointed and fired. The film was manufactured outside the courtroom. It was shown to the jury on a screen using expensive and technologically sophisticated machinery. There was undoubtedly a hushed atmosphere in the courtroom. The attention of the jury was undoubtedly focused in that special manner which accompanies theater and television viewing. It is impossible to conceive of a process posing a greater threat to the fairness of judicial proceedings. This particular film and its genre, as evidence, have no part in court and must be condemned in the strongest terms.

As has oft been noticed, it is not every error which requires remedy. Under the unique circumstances of this case, the error admitting this film was harmless at the guilt/innocence stage of the trial. Additional facts supporting the verdict show that when deputy sheriff Scroggins and deputy Ellison reached the car, the motor was running, the car was in drive, and the victim Winters was behind the wheel with his foot still on the accelerator. Appellant was in the back with the murder weapon. Winters was dying of multiple bullet wounds. Winters' gun was still secure in its holster. The risk that the jury gave significant weight to the erroneously admitted film in determining guilt or innocence is de minimus. Since I regard the ruling of the trial court to be error, I concur in result only in that part of the majority opinion affirming the conviction.

2. With respect to sentencing, I dissent and vote to set aside the sentence of death and order the imposition of a term of years. The trial court was in error in permitting Chief Scroggins over an Eighth Amendment objection to testify that as a direct result of the murder of Officer Winters he was unable to function at an appropriate level as chief, and had to seek medical help and take prescription drugs. He also testified that some officers as a direct result of the murder of Officer Winters began acting in a violent and illegal way in dealing with the public in the course of their duties.

The holding of the Supreme Court in *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), does not write the Eighth Amendment out of the issue of whether victim impact evidence is admissible during the penalty phase of a capital trial. After *Payne*, some victim impact evidence is admissible and some is not. In *Payne* the Supreme Court approved the prosecutor's use of a grandmother's testimony describing the sense of loss of her grandchild who himself managed to survive the same murderous attack which had taken the lives of his mother and sister. The child was a survivor of the very crime for which the death penalty was sought. I do not believe the Eighth Amendment, as interpreted by the Supreme Court in *Payne*, would permit a state to include a police chief or a police department among the survivors of crime for the purpose of admissibility. Clearly, only three Justices in *Payne* regard such large entities and the community as a whole as survivors for this purpose.

In its final order, the trial court added weight to the death aggravator based upon the "terrible effect" which this killing had on other officers. In so doing, it is evident that the trial court was moved by the testimony of

Chief Scroggins and inferences therefrom to add weight on the aggravator side of the scales. This was federal constitutional error and contrary to law.

3. In its final order, the trial court's final reason for choosing death was that under the circumstances of the case the "... imposition of the death penalty is supportable and the Court now accepts the recommendation of the jury." I continue to regard this type of reasoning as inconsistent with the requirement that the judge adjudicate the propriety of the sentence of death.

4. Finally, it is important to consider the distinctions between the circumstances of this case and those present in *Johnson v. State* (1992), Ind., 584 N.E.2d 1092, *cert. denied,* —— U.S. ——, 113 S.Ct. 155, 121 L.Ed.2d 105 (1992) and *Woods v. State* (1989), Ind., 547 N.E.2d 772, *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2911, 115 L.Ed.2d 1074 (1991), in which the death penalty was affirmed by this Court on appeal. In both those cases, as in this case, the defendant was under the lawful drinking age, and killed while intoxicated. There the similarities end. Both *Johnson* and *Woods* planned to rob a lone elderly person at home, and in executing such plans held weapons for use against the intended victims. Appellant did not plan to kill officer Winters and arm himself for that purpose. His design to kill and escape was made under a high state of intoxication, after having been handcuffed and confined in a small space. The weight of the aggravators in *Johnson* and *Woods* is greater.

SULLIVAN, J., concurs.